Robert Wesley MUSGRAVE, Appellant,

v.

The STATE of Texas, Appellee.

No. 57175.

Court of Criminal Appeals of Texas, Panel No. 3.

March 26, 1980.

On Rehearing Dec. 23, 1980.

Hellmut A. Erwing, Houston, for appellant.

Carol S. Vance, Dist. Atty., Douglas M. O'Brien and Keno M. Henderson, Jr., Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

Before DALLY, W. C. DAVIS and CLINTON, JJ.

## OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for unauthorized use of a motor vehicle. Punishment enhanced by two prior felony convictions, was assessed at life imprisonment. The appellant was indicted for theft and unauthorized use of a vehicle; however, the theft count was dismissed by the State. Trial was had before the court.

The appellant contends that the evidence is insufficient to sustain the conviction because the State did not prove that the appellant knew that the automobile was stolen. We agree with appellant's contention and reverse.

The State's case–in–chief consisted of testimony from three witnesses: Paul Merritt, the owner of the stolen car, and two police officers. Merritt testified that when he returned home from work, around 4:30 p. m. on July 23, 1976, his car was gone. The car had been parked in front of the house when he left for work that morning around six a. m. Merritt reported the theft to the police. On Sunday, July 25, 1976, at approximately three p. m., Merritt saw his 1966 Chevrolet Impala traveling on Westheimer St. Merritt followed the car until it pulled into a parking lot next to some apartments. He testified that he believed that three persons were in the car, although he was unable to further identify them, except to say that they all had blonde hair. During cross–examination, defense counsel asked the witness how many people got out of this car. Merritt responded, "The next thing I saw was three people walking into the apartment. I did not see them get out of the car. By that time the car had gotten into the parking lot." Merritt was unable to identify the appellant other than stating that the appellant was the man that he saw sitting in the police car later that afternoon.

Merritt called the police, and within minutes, they had set up surveillance of the area. Approximately two hours later, the appellant got in the stolen vehicle, drove off, and was immediately apprehended.

Office Yarborough testified that the appellant told him that his friend Cliff had given him the keys to his car so that he could go to the store. The officer testified that appellant did not tell him Cliff's last name, but the officer could not remember if the appellant did not know his last name or if appellant just refused to tell the officer. The officer testified:

"He did not tell me his last name and I asked him repeatedly if he knew that to be his street name, how well he knew him. He stated he only knew him a few days and he would not tell me his apartment number nor was he willing to take me back to the apartment he supposedly just left."

The last witness to testify before the State rested, Officer J. W. Webber, identified the appellant as the man arrested in the stolen car.

Defense witness James Nolen, the foreman at the shop where appellant worked, testified that on July 23, 1976, the day that the car was stolen, the appellant arrived at work about 9:30 a. m. James Stinchcomb worked with the appellant at the diesel tractor and truck service shop. He testified that he and the appellant usually ate breakfast together and then he would drive appellant to work. However, on July 23, 1976, abut 7:45 a. m. when Stinchcomb went to get the appellant for breakfast, he found him still in bed. The appellant told him that he did not feel well and that he would get up a little later. Stinchcomb said that the appellant got to work about 9:30 a. m. that day.

The appellant lived one mile from his place of employment. The appellant's employer, C. C. Nolen, testified that about 9 a. m. on July 23, 1976, he saw the appellant five blocks from the shop, walking to work. C. F. Nolen testified that the appellant

worked until 8:30 or 9:00 that evening, but that appellant left for a short period of time to cash his paycheck. The security manager at K–Mart testified that the appellant's paycheck had been cashed at the store on July 23, 1976. She was unable to ascertain the exact time that the check was cashed, but she was able to determine that the time was between 5:20 and 9:30 p. m.

The appellant testified that he was not feeling well on the morning of July 23, 1976. He said that he walked to work that morning and did not leave until 8:00 that night, except for fifteen minutes when he left to cash his paycheck. The appellant testified that on Sunday, the day that he was arrested, he woke up late, then walked to the store to get a paper. He said that about 2:00 that day, Cliff came over to his apartment. The appellant said that Cliff lived near his parents' home and that Cliff was going to give him a ride to his parents' house later. The appellant rode with Cliff to his apartment off of Westheimer St. about 3:00 p. m. The appellant said that he and Cliff were the only ones in the car, and that there was not a third person with them.

The appellant stated that he did not know Cliff's last name at that time; and that he had only met Cliff one time before, two weeks earlier. He said that he was at Cliff's apartment with some other people when both he and Cliff ran out of cigarettes. Appellant said that he was going to the store to get some, and Cliff handed him the car keys and told him to take his car. Appellant's version of the arrest was as follows:

"They told me the car was stolen and I told them that I didn't know that, I just borrowed the car to go to the store. He asked me who I got it from. I said Cliff. He asked me his last name, I told him I didn't know his last name. He didn't seem to believe me. Then he asked me which apartment he lived in. I told them I didn't know which apartment number it was, but I described where it was at, it was the last one in the row of apartments."

Evidence was adduced through several witnesses that the appellant did not own a car, and that he relied on several people for transportation. The appellant was on parole at the time of his arrest. After he was released from prison in April, the appellant lived with his parents for a while, then with a family named "Murphy." The car was stolen from Graistark Street. The appellant testified that he knew where that street was because it was in the same neighborhood that the Murphys lived in. It was also uncontroverted by the State that Graistark Street was about 25 miles from the area of town where appellant was living and working at the time of his arrest. The appellant described Cliff as being about 25 or 26 years old, with silverish hair. He said that Cliff worked on Studemont Street at a place that installed burglar bars.

The State introduced rebuttal testimony of M. D. George, a detective in the automobile theft division. George testified that the appellant insisted that Cliff had given him the keys to his car; however, he said that the appellant would not further describe Cliff. The detective also said that the surveillance of the apartments was stopped as soon as the appellant was arrested. The police did not contact the manager of the apartments about a tenant named "Cliff" because, "At that particular time it was nighttime." The detective said that the investigation stopped with the appellant's arrest because there were "just too many Cliff's" and "If the [appellant] wanted to tell me, he should have been able to give me the information."

The owner of the car was called as a defense witness. Merritt testified that it was raining on the afternoon that his car was stolen. He said that when he arrived home from work about 4:30 p. m., automobile tracks were still visible, uncovered by the rain, leaving the spot where his car had been parked.

Unauthorized Use of a Vehicle is set forth in V.T.C.A. Penal Code as follows:

"(a) A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor–

propelled vehicle without the effective consent of the owner.

(b) An offense under this section is a felony of the third degree."

The applicable mental states for this offense are defined in V.T.C.A. Penal Code, Sec. 6.03(a) and (b):

"(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

(b) A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result."

The State has the burden to prove all of the elements of an offense. Under the facts of this case, the State was required to prove that the appellant knew that the car was stolen in order to show that the appellant intentionally and knowingly operated the vehicle without the owner's consent. Knowledge that the property was stolen may be implied from the circumstances. *Ehrman v. State*, 580 S.W.2d 581 (Tex.Cr. App.1979); *Walker v. State*, 539 S.W.2d 894 (Tex.Cr.App.1976).

The personal, unexplained possession of recently stolen property is sufficient to raise a presumption or inference of guilt. However, the personal possession of recently stolen property is not sufficient to sustain a conviction for appropriation of that property if, when the accused was "first directly or circumstantially called upon to explain his possession of the property he made a reasonable explanation which is not refuted, showing his honest acquisition of the property." *Prodan v. State*, 574 S.W.2d 100, 102 (Tex.Cr.App.1978). See *Smith v. State*, 518 S.W.2d 823 (Tex.Cr.App.1975); *Callahan v. State*, 502 S.W.2d 3 (Tex.Cr. App.1973).

In *Huff v. State*, 492 S.W.2d 532 (Tex.Cr. App.1973), this Court reversed the defendant's conviction for automobile theft where the State proved that the defendant was in possession of a stolen automobile when arrested. The State also proved that defendant maintained that he had purchased the automobile. The State did not refute or prove the falsity of the defendant's explanation. We held:

"Where a defendant's explanation is reasonable and is sufficient to rebut the circumstance of possession of property recently stolen, the evidence is insufficient to sustain the conviction if it fails to show that the explanation was false."

In *Glover v. State*, 566 S.W.2d 636 (Tex. Cr.App.1978), this Court held that the evidence was sufficient to show that the defendant knew the automobile was stolen, thereby upholding his conviction for unauthorized use of a vehicle. In *Glover*, supra, the defendant was arrested after driving the stolen vehicle the wrong way on a one—way street. The defendant first told the officers that he had borrowed the car from a friend to pick up his aunt at the bus station. He later stated that he was on the way to the bus station to pick up his nephew. There were several inconsistencies in the defendant's story. There were also pry marks on the windshield of the stolen car, the vent window had been pulled out, wires were hanging down from under the dash, and the key which was in the car's ignition did not match the car.

In *Shaw v. State*, 529 S.W.2d 75 (Tex.Cr. App.1975), we held that the evidence was sufficient to sustain a conviction for unauthorized use of a vehicle where the police attempted to stop a vehicle which was driving on the wrong side of the road and speeding. During the chase, police received information that the car had been stolen the previous day. The defendant drove the stolen car into a shopping center parking lot and then jumped out of the moving car. The defendant admitted that he was in the car, but maintained that he was a passenger in the car, and that he did not know the car

was stolen. A police officer testified that the defendant was the only person in the car.

Considering the facts and circumstances of this case, we find that the evidence is insufficient to sustain the conviction. The dissent concedes that possession of the stolen car was the only evidence to show the appellant's guilt and submits that the ultimate question is whether the appellant's explanation is reasonable. The reasonableness of the explanation is indeed a question of fact. However, even where the trial court is the sole trier of the facts, it remains incumbent upon the State to prove every element of the offense beyond a reasonable doubt. See *Grant v. State*, 566 S.W.2d 954 (Tex.Cr.App.1978). In this case, the State was required to prove appellant's knowledge that the vehicle was stolen. Possession alone is not sufficient to show that the appellant knew the property was stolen. *The possession must be coupled with other significant circumstances to justify an inference of knowledge that the property was stolen. Pool v. State*, 528 S.W.2d 255 (Tex.Cr.App.1975); *Bradshaw v. State*, 482 S.W.2d 233 (Tex.Cr.App.1972).

The dissent cites *Callahan v. State*, 502 S.W.2d 3 (Tex.Cr.App.1973) for the proposition that the reasonableness of the accused's explanation is a question of fact. In *Callahan v. State*, supra, the defendant was convicted for burglary. The defendant and a companion were apprehended when police, responding to a silent alarm at 1:22 a. m., found the two behind the burglarized liquor store with the stolen liquor in their possession. The defendant explained that two unidentified men approached them and gave them $5.00 each to hold the whiskey until 8:00 p. m. the next night. We held, "It should be remembered that a jury is not bound to accept an appellant's explanation of his possession of recently stolen property. (citations omitted) However, when the explanation is made at the time when the appellant's possession of recently stolen property is first challenged or questioned either directly or circumstantially, the necessity of showing the expla-

nation is false is greater. This is particularly true where such explanation is reasonable and is sufficient to rebut the circumstance of possession of property recently stolen.... Still further, the falsity of an explanation may be shown by circumstantial evidence and determined by the jury in light of all the facts."

In this case, the appellant's possession of the car was explained. The State did not attempt to disprove the appellant's story by further investigation. See *Huff v. State*, supra. There were no other circumstances such as flight, inconsistent stories, or the physical condition of the car to indicate that the appellant knew the car was stolen. There are circumstances which weaken the State's case against the appellant. Paul Merritt saw three men with blonde hair in his car. He could not identify the appellant as one of the occupants of the car. Police knew that other suspects were still in the apartment. Furthermore, the evidence indicates that the appellant was at work, 25 miles away, when the car was stolen. Of course, the State was required to show only that the appellant knew the car was stolen, and not that the appellant actually stole the car; however, it is a circumstance which operates in the appellant's favor. The fact of possession alone is insufficient to support the conviction, in light of the surrounding facts and circumstances.

Accordingly, the judgment of conviction is reversed and remanded to the trial court with instructions to enter a judgment of acquittal.

DALLY, Judge, dissenting.

It should be remembered that this appellant was not prosecuted for theft of an automobile, V.T.C.A. Penal Code, Sec. 31.-03(a), (b)(1); he was not prosecuted for appropriating stolen property knowing that it had been stolen by another, V.T.C.A. Penal Code, Sec. 31.03(a), (b)(2); he was prosecuted for the offense of intentionally and knowingly using a motor vehicle without the consent of the owner.

The majority says:

"The appellant contends that the evidence is insufficient to sustain the conviction because the State did not prove that the appellant knew the automobile was stolen. We agree with appellant's contention and reverse. . . .

"The State has the burden to prove all of the elements of an offense. Under the facts of this case, the State was required to prove that the appellant knew that the car was stolen in order to show that the appellant intentionally and knowingly operated the vehicle without the owner's consent. Knowledge that the property was stolen may be implied from the circumstances."

V.T.C.A. Penal Code, Sec. 31.07(a) provides that:

"A person commits an offense if he intentionally or knowingly operates another's boat, airplane or motor–propelled vehicle without the effective consent of the owner."

Paul Merritt, the lawful owner of the automobile, testified that he did not consent to the appellant's use of his motor vehicle. There is ample evidence that the appellant intentionally and knowingly drove and operated the motor vehicle which belonged to Paul Merritt. This evidence supports the allegations of the indictment and is ample to sustain the conviction. See e. g., *Shaw v. State*, 529 S.W.2d 75 (Tex.Cr.App.1975); *Glover v. State*, 566 S.W.2d 636 (Tex.Cr. App.1978).

It is the appellant who has interposed the defense that someone else stole the automobile and he, the appellant, not knowing it was stolen, used the motor vehicle thinking he had the consent of one who could lawfully give such consent. It is incorrect to say that the State must prove what the appellant has set up for his defense. The State proved all that is necessary to be proved to sustain the conviction and the judge as the trier of the facts did not believe the appellant's defense and found him guilty. Cf. *Glover v. State*, supra; *Shaw v. State*, supra.

Since the evidence amply supports the conviction for the unauthorized use of the motor vehicle, this Court is in error in saying that it was necessary for the State to prove that the appellant knew that the automobile was stolen. The majority are improperly acting as fact finders and have improperly acquitted the appellant. See *Lyles v. State*, 582 S.W.2d 138 (Tex.Cr.App. 1979). I dissent.

Before the court en banc.

OPINION ON STATE'S MOTION
FOR REHEARING

ONION, Presiding Judge.

This appeal is from a conviction for unauthorized use of a motor propelled vehicle, where the punishment was assessed at life imprisonment under V.T.C.A., Penal Code, § 12.42(d). The panel opinion on original submission held that the State had the burden of proving all the elements of the offense charged and the State failed to prove as it was required to do that the appellant knew the vehicle he was driving was stolen in order to show that he intentionally and knowingly operated the vehicle without the owner's consent. There was a vigorous dissenting opinion by Judge Dally.

On rehearing, and after further consideration, we agree with the original dissenting opinion, grant the State's motion for rehearing and affirm the judgment.

V.T.C.A., Penal Code, § 31.07, provides:

"(a) A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor–propelled vehicle without the effective consent of the owner.

"(b) An offense under this section is a felony of the third degree."

The elements of the offense under said § 31.07 are: (1) a person (2) intentionally or knowingly (3) operates an airplane, boat, or motor–propelled vehicle (4) without the effective consent of the owner. *Neely v. State*, 571 S.W.2d 926 (Tex.Cr.App.1978). The offense under said § 31.07 has the same elements as theft under V.T.C.A., Penal Code, § 31.03(a), (b)(1), except that in such theft there is the additional element of an

intent to deprive the owner of property. In *Neely v. State*, supra, it was held that the offense of unauthorized use of a motor–propelled vehicle could be proven by the same *or less* than all the facts necessary to prove theft; that it is a lesser included offense under the current 1974 Penal Code although it may not have been under the former Code. Further, in *Neely* it was held that since the facts would have sustained the defendant's conviction for theft under the current Penal Code, such facts would have sustained his conviction for the lesser included offense of unauthorized use of a motor–propelled vehicle as alleged.

The Practice Commentary to said § 31.07 reads:

"Section 31.07 combines and restates prior Penal Code arts. 1333 (using a boat without consent), 1341 (driving vehicle without consent), and 1342 (unlawful use of state's vehicle) and adds airplanes, which may soon become a problem. *It proscribes the use of property without the owner's consent when the actor has no intent to deprive and thus is not guilty of theft.*

"Boats and airplanes are included, in addition to motor vehicles in general, to cover sailboats and gliders, for example, which do not depend upon a motor for propulsion.

"Curiously, the penalty has been increased to a felony regardless of the value of the 'borrowed' vehicle. A car thief, if he steals only automobiles with a value of less than $200, is better off if he is convicted of *theft* than if he is convicted of the 'lesser' offense of driving without consent. Under prior law, art. 1340, the comparable offense became a felony only when the value of the 'borrowed' car exceeded $200, and at that time $50 was the felony threshold for theft purposes." (Emphasis supplied.)

In the instant case, the State's evidence showed that on July 25, 1976, the appellant, a person, was stopped by the police while operating a motor–propelled vehicle, a 1966 Chevrolet, which had been stolen two days earlier. Paul Merritt, the lawful owner of the automobile, testified he had not given his consent to appellant to use his automobile. At the time of his arrest, appellant was in possession of five Chevrolet master ignition keys [1] and a switchblade knife and told the arresting officer, "There's nothing you can do to help me, I'm going back to the penitentiary." He told the officer he had obtained the car from a "Cliff," but did not know or refused to give Cliff's last name and refused to take the officer back to the apartment where Cliff supposedly was in the apartment complex the appellant had just left. He was described as being uncooperative.

The elements of the offense charged were adequately demonstrated by the State, including the element of culpable mental state of "intentionally."

The appellant, who had been convicted of possession of marihuana in 1967 and of three felonies involving theft and burglary in 1974 and was on parole at the time of his arrest, testified that he had met "Cliff" or "Clifford" about two weeks before the incident in question and at the time did not know Cliff's last name. He related Cliff had come by his apartment or room on July 25, 1976, and that he had gone with Cliff to Cliff's apartment where there were other people, and when it was discovered they all were out of cigarettes he offered to walk to the store. Cliff told him to take his (Cliff's) car and gave him the set of master ignition keys later found in his possession. He had only driven about two blocks before he was arrested. He testified he did not know the automobile involved was stolen. The appellant offered evidence, which if believed, would strongly indicate he could not have been the person who actually stole the 1966 Chevrolet on July 23rd. The trial court was the trier of the facts, the judge of the credibility of the witnesses and the weight to be given to their testimony. The trial

---

1. This fact was not mentioned in the panel opinion by the majority as the State's motion for rehearing points out.

court had the right to accept or reject any evidence offered by the State or the appellant. The defense offered by the appellant that someone else stole the automobile and he, not knowing such fact, used the automobile thinking he had consent of the one authorized to give such consent does not create an additional element to the offense of which the appellant was convicted.

Viewing the evidence in the light most favorable to the judgment, we conclude the evidence is sufficient to sustain the conviction. The original dissenting panel opinion is correct. The State's motion for rehearing is granted and the judgment is affirmed.

ROBERTS, Judge, concurring.

The Court holds that a person commits the offense of unauthorized use of a motor vehicle if he (1) knowingly or intentionally operated another's motor vehicle (2) without the owner's effective consent. Under this holding the accused's knowledge that he was acting without the owner's consent is not an element of the offense. The Court's analysis, while giving effect to the state of mind requirement as it relates to conduct, ignores that requirement as it relates to the circumstances surrounding the conduct. V.T.C.A., Penal Code, Sec. 6.03 recognizes that the material elements of offenses vary in that they may involve (1) the nature of the forbidden conduct or (2) the attendant circumstances or (3) the result of conduct. With respect to each of these three types of elements, Section 6.03 attempts to define the kinds of culpability that may arise. The resulting distinctions are necessary to avoid confusing the proof requirements for each type of offense. S. Searcy & J. Patterson, "Practice Commentary," 1 *Vernon's Texas Codes Annotated: Penal Code* 87 (1973).

The offense of unauthorized use of a motor vehicle requires proof of the forbidden conduct and the attendant circumstances of the crime. The State had to show at a minimum that the appellant *knowingly* operated the motor vehicle of another (the conduct element) without the effective consent of the owner (the attendant circumstances element). Under the approach adopted by Section 6.03 the mental state requirement applies to the attendant circumstances element as well as to the conduct element of the offense. A person acts "knowingly" with respect to circumstances surrounding his conduct when he is aware that the circumstances exist. V.T.C.A., Penal Code, Sec. 6.03(b). In other words, knowledge that the requisite external circumstances exist is an element of the instant offense.

I would hold that Section 6.03 required the State to prove that the appellant was aware that he did not have the owner's consent to operate the vehicle in order to sustain its burden of proof.* But the Court apparently considers the issue of the appellant's knowledge as to the element of consent to be an affirmative defense which must have been raised and proved by the appellant. This approach may have been proper under the former Penal Code but it is not consistent with the new concept of culpable mental states adopted by the present Code. The Court is correct in saying that the appellant's "defense" (that he used the automobile thinking he had the owner's consent) did not create an additional element of the offense. That element of knowledge was created by the Penal Code's requirement that the proscribed culpable mental state be applied to each distinct element of the offense—including the requisite attendant circumstances. The approach adopted by the Court today has failed to recognize this requirement, and it can only be described as incongruous to the present Penal Code.

PHILLIPS, W. C. DAVIS and CLINTON, JJ., join this opinion.

---

* I would further hold that there was sufficient evidence for the trial court to have found that the appellant acted with knowledge of this requisite circumstance. Therefore I concur in the result.