**Jackie Vestal GARDNER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–86–01191–CR.**

Court of Appeals of Texas, Dallas.

Aug. 14, 1987.

Kelly Loving, Dallas, for appellant.
Leslie McFarlane, Dallas, for appellee.

Before WHITHAM, ROWE and HECHT, JJ.

WHITHAM, Justice.

Appellant appeals a conviction for the unauthorized use of a motor vehicle. In his sole point of error, appellant contends that the evidence is insufficient to sustain a finding of guilt for the unauthorized use of a vehicle. We agree. Accordingly, we reverse and render a judgment of acquittal.

 In determining the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and

determine whether any trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Girard v. State*, 631 S.W.2d 162, 163 (Tex.Crim. App.1982). Taken in this light the record reflects that appellant lived in Emory, Texas. On Saturday, August 23, 1986, appellant drove his pickup truck from his home in Emory to Dallas to visit his father and go on a date with a girl named Cindy. When appellant arrived in Dallas, he went to his friend David's house. Appellant had known David since November 1985. Appellant met Cindy at David's house where they stayed for thirty to forty-five minutes and then went to a lake. Appellant returned Cindy to her home at about 4:45 a.m. the following day, Sunday, August 24, 1986. Appellant intended to return to Emory after taking Cindy home but, on the way back to Cindy's, appellant's truck began to run poorly. The engine was "missing" and dying, so appellant believed that the points were fouling out. Since David lived about a tenth of a mile from Cindy, appellant decided to drive to David's house and repair the truck before returning home. Appellant asked David to take him to a parts store, but David did not want to go out at five o'clock in the morning. Instead, David told appellant to take his car to get the parts. Appellant parked his truck on David's front lawn, locked it, gave David the keys, took David's 1986 Chevrolet Camaro and left for the Chief Auto Supply on Buckner and Lake June Road.

Officer Durica observed appellant turn from Adam Street onto Prairie Creek without signaling and stopped him. Durica asked appellant where he was going and appellant told him he was going to a parts house. Appellant explained that he was going to get parts for his truck. At the time of the stop, however, appellant was traveling in the opposite direction from the parts store. Durica asked appellant where he had gotten the Camaro he was driving, and appellant replied that he had borrowed it from a friend. When Durica asked appellant the name of the friend, appellant told him that he borrowed the car from David. When asked, appellant gave the officer David's telephone number. Officer

Durica had his dispatcher call David using the number appellant had given. David denied knowing appellant. Appellant told Durica that David was lying and stated that, "[m]y truck is sitting in his yard right now." Appellant told Durica where he could find David and the officer took appellant to David's house. David was at the house as was appellant's truck. Appellant's truck, however, was in the back yard. Appellant had left the keys to the truck with David.

Durica looked into appellant's truck and saw the license tags that had been removed from the 1986 Camaro. The Camaro had paper automobile dealer license tags on it in place of the real tags when Durica stopped appellant. Durica determined that the keys were in the Camaro when appellant was driving it. Appellant then told Durica, "If this car was stolen, I don't want to leave my—take the chance of leaving my truck at his house." So, at appellant's request, his truck was taken to the city automobile pound. Before the truck was taken to the pound, Durica drove the truck from the back yard to the front yard. Durica had no problem starting the truck, but he did have a problem shifting the gears. Testimony revealed that David worked on used cars. The parties stipulated that Gina Shands was the owner of the 1986 Chevrolet Camaro, that the car was stolen from her on August 24, 1986, and that she did not give appellant permission to drive her car.

Section 31.07 of the Texas Penal Code provides:

> (a) A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner.
>
> (b) An offense under this section is a felony of the third degree.

TEX. PENAL CODE ANN. § 31.07 (Vernon 1974).

We focus on the elements of the offense that the State was required to prove. The elements of the offense under section 31.07 are: (1) a person (2) intentionally or knowingly (3) operates an airplane, boat, or mo-

tor-propelled vehicle (4) without the effective consent of the owner. *Musgrave v. State*, 608 S.W.2d 184, 189 (Tex.Crim.App. 1980) (on rehearing). In the present case, appellant insists that the State failed to establish that appellant intentionally or knowingly operated a motor vehicle *without the owner's consent*, the fourth element of the State's case. *Musgrave*, 608 S.W.2d at 189. We fail to see how under the facts of this case any rational trier of fact could have found that appellant knowingly and intentionally operated the Camaro without the owner's consent. We reach this conclusion because none of the evidence proved that appellant intended to use, or knew that he was using, a Camaro owned by anyone other than David. Indeed, the evidence proved no more than that appellant intended to use David's motor vehicle.

The State relies upon *Musgrave*. We point out how this case differs from *Musgrave*. We quote *Musgrave*:

In the instant case, the State's evidence showed that on July 25, 1976, the appellant, a person, was stopped by the police while operating a motor-propelled vehicle, a 1966 Chevrolet, which had been stolen two days earlier. Paul Merritt, the lawful owner of the automobile, testified he had not given his consent to appellant to use his automobile. At the time of his arrest, appellant was in possession of five Chevrolet master ignition keys and a switchblade knife and told the arresting officer, "There's nothing you can do to help me, I'm going back to the penitentiary." He told the officer he had obtained the car from a "Cliff," but did not know or refused to give Cliff's last name and refused to take the officer back to the apartment where Cliff supposedly was in the apartment complex the appellant had just left. He was described as being uncooperative.

*Musgrave*, 608 S.W.2d at 190 (footnote omitted). We read the accused's statement to the officer in *Musgrave* as tantamount to a confession by the accused that the accused intentionally and knowingly operated the motor vehicle without the owner's consent. "There's nothing you can do to help me, I'm going back to the penitentiary." Thus, in *Musgrave*, the accused, in the language of the street, voluntarily confessed to the arresting officer. Therefore, we read *Musgrave* to hold that based on the facts recited in the opinion "[the] elements of the offense charged were adequately demonstrated by the State, including the element of culpable mental state of 'intentionally'." *Musgrave*, 608 S.W.2d at 190. *Accord, Thomas v. State*, 646 S.W.2d 565, 567 (Tex.App.—Houston [1st Dist.] 1982, no pet.) (appellant fled officers and, upon arrest, told officers that the van belonged to an old friend "George," that he had been test driving the van and that he did not know "George's" last name or where "George" lived). Consequently, we conclude that *Musgrave* and *Thomas* are inapplicable to the present case.

Although relying upon *Musgrave* in their brief, the State during oral argument wavered on the applicability of *Musgrave* to the present case. At oral argument, the State sought to connect the culpable mental state of "intentionally" to appellant's act of turning on the Camaro's ignition switch with its key. In doing so, the State told us that section 31.07 was a criminal strict liability statute. Hence, by the State's reasoning, the moment a driver turns the key in the ignition switch in an automobile that turns out to be stolen, that person becomes a felon. We disagree. Section 31.07 does not create a strict liability offense. *See Lynch v. State*, 643 S.W.2d 737, 738 (Tex.Crim.App.1983). *Contra, Johnson v. State*, 635 S.W.2d 564, 566 (Tex.App.—Houston [14th Dist.] 1982, no pet.) (to the extent that *Johnson* can be read to be contrary to our decision in the present case, we decline to follow *Johnson*).

Instead of being a strict liability offense, section 31.07 requires a culpable mental state—"intentionally or knowingly." *Musgrave*, 608 S.W.2d at 190; section 31.07(a). Moreover, since section 31.07 is not a strict liability offense, we conclude that the culpable mental states of "intentionally" or "knowingly" apply to each element of the offense. Thus, we conclude further that

the culpable mental states of section 31.07 modify both "operates a motor-propelled vehicle" as well as "without the effective consent of the owner." Thus, we reason that in the present case the State in order to convict must prove a culpable mental state as to the fourth element of the offense—without the effective consent of the owner.

The State's proof of this culpable mental state would ordinarily be based upon circumstantial evidence. Proof of a culpable mental state generally relies on circumstantial evidence. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App.1978). It is well established that a conviction based on circumstantial evidence cannot be sustained if the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused, and proof amounting only to a strong suspicion or mere probability is insufficient. *Schershel v. State*, 575 S.W.2d 548, 550 (Tex.Crim.App. 1979) (appeal from a conviction for the unauthorized use of a motor vehicle). This is especially significant when there is a potential witness who could have shed light on the missing facts of the case. *Schershel*, 575 S.W.2d at 550–51. Where circumstantial evidence relied on by the prosecution is obviously weak and where the record on appeal affirmatively shows not only that other testimony which would have cast additional light on the facts was available to the prosecution, but also that the prosecution did not introduce such other evidence or satisfactorily account for its failure to do so, the appellate court will treat the case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction. *Schershel*, 575 S.W.2d at 551.

In the present case, we conclude that the circumstantial evidence is weak, that the record on appeal affirmatively shows that additional evidence from Shands (stipulated or in person) would have cast additional light on the facts and that the State did not introduce additional testimony of Shands (stipulated or in person) or account for its failure to do so. Hence, in the present case, the State produced no evidence shedding light on how and when the Camaro was stolen, other than the stipulation that the Camaro was stolen August 24, 1986. Thus, we do not know the time on August 24 when the Camaro was stolen. We do not know the place where the Camaro was stolen. We do not know whether Shands left the ignition key in the Camaro before it was stolen. We do not know whether Shands gave David permission to drive the Camaro. (All we know is the stipulation that Shands was the owner, that the car was stolen from her on August 24, 1986, and that she did not give appellant permission to drive her car.) We do not know the source of the paper automobile dealer license tags on the Camaro at the time Durica stopped appellant. We know nothing about the ignition key Durica found in the ignition switch in the Camaro at the time Durica stopped appellant. Therefore, we must treat the present case as one showing reasonable doubt of the sufficiency of the evidence to support the conviction. *See Schershel*, 575 S.W.2d at 551.

Given additional evidence from a person who could shed light on the missing facts of this case, we conclude that the circumstances do not exclude every other reasonable hypothesis except that of the guilt of the accused. *See Schershel*, 575 S.W.2d at 550–51. Indeed, we conclude further that the proof in the present case amounts only to a strong suspicion or mere probability of appellant's guilt. Such proof is insufficient. *See Schershel*, 575 S.W.2d at 550. Consequently, we conclude that in the present case no rational trier of fact could have found the essential elements of the unauthorized use of a motor vehicle under section 31.07 from the evidence beyond a reasonable doubt. We reason that the cumulative force of all the incriminating circumstances was not sufficient for the trial court, as the trier of fact, to decide, as it did, that appellant was guilty beyond a reasonable doubt of the offense with which he was charged. It follows, and we so hold, that the evidence is insufficient to sustain a finding of guilt for the offense of the unauthorized use of a motor vehicle under section 31.07. We sustain appellant's sole point of error and reverse the trial court's judgment.

Under *Burks v. United States*, 437 U.S. 1, 18, 98 S.Ct. 2141, 2151, 57 L.Ed.2d 1

(1978), and *Greene v. Massey*, 437 U.S. 19, 24, 98 S.Ct. 2151, 2154, 51 L.Ed.2d 15 (1978), a reversal based on insufficient evidence operates to acquit the defendant of the offense for which he is tried. *Windham v. State*, 638 S.W.2d 486, 487–88 (Tex. Crim.App.1982). In the present case, the evidence is not sufficient to support the allegations in the indictment. *See Windham*, 638 S.W.2d at 487–88. Thus, under the evidence, the only verdict the trial court properly can have reached was an acquittal. *See Windham*, 638 S.W.2d at 488. Therefore, we must render a judgment of acquittal.

Reversed and judgment of acquittal rendered.

ROWE, J., dissents with opinion.

ROWE, Justice, dissenting.

I respectfully dissent. Because I believe that the evidence is sufficient to support that conviction, I would affirm.

This is an appeal from a conviction for unauthorized use of a motor vehicle. Appellant was found guilty after a trial to the court. As set out by the majority, in determining the sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and determine whether any trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt. *Girard v. State*, 631 S.W.2d 162, 163 (Tex.Crim.App.1982). Viewed in this light, the evidence shows that appellant was apprehended driving a car belonging to Gina Shands. The evidence further showed that Ms. Shands had not given appellant permission to operate the car.

To convict appellant under section 31.07 of the Texas Penal Code, the State was obliged to prove that (1) appellant intentionally or knowingly operated a motor-propelled vehicle, (2) without the effective consent of the owner of the vehicle. *Musgrave v. State*, 608 S.W.2d 184, 189 (Tex. Crim.App.1980) (on rehearing). The evidence unquestionably establishes that the State met this burden.

The majority would add an additional element to the State's burden and require the State to prove that appellant intended to use, or knew that he was using, a Camaro owned by someone other than David and that he did not have that person's consent. In *Musgrave*, the Court expressly rejected this proposition and held that evidence of a defensive nature that the appellant used the vehicle thinking he had the consent of the owner *does not create an additional element to the offense.* *Musgrave*, 608 S.W.2d at 191.

I agree with the majority, however, that unauthorized use of a motor vehicle is not a strict liability offense. In *Lynch v. State*, 643 S.W.2d 737, 738 (Tex.Crim.App.1983), the court recognized that an appellant is entitled to present a mistake of fact defense in an unauthorized use prosecution. *Id.* Under section 8.02 of the Texas Penal Code, it is a defense to prosecution that the actor, through mistake, formed a reasonable belief of a matter of fact, provided his mistaken belief negates the kind of culpability required for commission of the offense. From the court's holding in *Lynch*, it is clear that a mistake of fact defense is raised in an unauthorized use of a motor vehicle prosecution by an assertion by the defendant that he was operating the vehicle while under the mistaken belief that the person giving him permission to operate the vehicle was authorized to give that permission. *See Lynch*, 643 S.W.2d at 738.

Although appellant's testimony that he borrowed the vehicle from his friend David, whom he believed to be the owner, raises the defensive issue of mistake of fact cognizable under *Lynch*, we must assume that the trial judge, sitting as trier of fact without a jury, considered this defense and rejected it. *McQueen v. State*, 714 S.W.2d 142, 143 (Tex.App.—Fort Worth 1986, no pet.); *see also Guerrero v. State*, 666 S.W.2d 350, 352–53 (Tex.App.—Corpus Christi 1984, no pet.); *Simonsen v. State*, 662 S.W.2d 607, 612 (Tex.App.—Houston [14th Dist.] 1983, no pet.); *Thomas v. State*, 646 S.W.2d 565, 566–67 (Tex.App.— Houston [1st Dist.] 1982, no pet.); *Johnson v. State*, 635 S.W.2d 564, 566 (Tex.App.— Houston [14th Dist.] 1982, no pet.). This assumption would remain valid even if appellant's evidence on the mistake of fact defense had been unchallenged. *McQueen*,

714 S.W.2d at 143; *Bohn v. State*, 651 S.W.2d 274, 275 (Tex.App.—Dallas 1983, no pet.).

Finally, even if I were to accept the majority's conclusion that the State had the burden of proving that appellant knew that he was operating the vehicle without the owner's consent, this showing may be established by circumstantial evidence. *Ehrman v. State*, 580 S.W.2d 581, 583 (Tex. Crim.App.1979). Viewed in the light most favorable to the verdict: (1) appellant was arrested driving a stolen vehicle; (2) the license plates to the stolen vehicle were discovered inside of appellant's truck; (3) when apprehended, appellant was travelling in the direction opposite to that which he should have been going to reach the location where he told the arresting officer he was bound; (4) although appellant stated that he had borrowed the vehicle because his own was experiencing mechanical difficulties, the arresting officer did not notice the complained of mechanical problems when he drove the appellant's truck. Based upon this evidence, I would conclude that there is sufficient evidence from which a rational trier of fact could conclude that appellant knew that he was operating the vehicle without the owner's consent.

Accordingly, I would affirm the judgment of the trial court.