CR5-367.SILVA 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-95-00367-CR


NO. 03-95-00432-CR







Roy Dean Silva, Appellant




v.




The State of Texas, Appellee








FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT


NOS. 95-1734 & 95-1753, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING








PER CURIAM

 

 A jury found Roy Dean Silva, appellant, guilty of attempted murder and aggravated
assault with a deadly weapon. Tex. Penal Code Ann. §§ 15.01(a), 19.02(b), 22.01(a), 22.02(a)(2)
(West 1994). (1) The trial court assessed punishment at eighteen years in prison for attempted
murder and two years in prison for aggravated assault. By two points of error, appellant contends
that the evidence is insufficient to support the convictions. We will affirm the judgments of
conviction.



BACKGROUND


 Appellant and his friend, Rudolph Shibner, arrived in Austin on February 2, 1995,
to visit appellant's uncle, Daniel Rodriguez. That night appellant, Shibner, and Rodriguez went
out for an evening in downtown Austin. Five friends, Bryan Fitch, Darrin Mooney, Danny
Cedillo, Brett Gow, and Jeff Saurenmann also decided to spend the evening of February 2 in
downtown Austin. The five friends went to two bars and then decided to go get something to eat. 
As the five friends were returning to their car several blocks away, Mooney stopped and played
craps with a man on the sidewalk. After Mooney lost his money, five individuals all dressed in
black walked up, gathered the money from the man with whom Mooney had played craps, and
began to walk away. The five friends stopped the individuals dressed in black, and, after a
discussion, got the money and gave it back to the man with whom Mooney had played craps. The
five friends continued walking to their car.

 Shortly after the five friends drove away, they saw the five individuals dressed in
black at a downtown street corner. The five individuals dressed in black were taunting the five
friends and yelling at them. The five friends got out of their car and exchanged words with the
individuals dressed in black. About this time, appellant, Shibner, and Rodriguez, seeing the
exchange, stopped their truck in the middle of the street and asked if there was going to be a fight. 
Everyone said, "no," and the five individuals dressed in black walked away.

 The five friends stopped to talk with appellant and his friends, and told them that
there would be no fight and that they were going home. Rodriguez then patted Mooney on the
back and said, "all cool," after which Mooney patted Rodriguez on the back and said, "yea." 
Appellant then stepped in and said that he didn't like the way Mooney touched his uncle. Mooney
turned around and said he was willing to fight appellant. Mooney then noticed that appellant was
holding an opened knife in his hand down by his side as they were talking. Appellant approached
Mooney with the knife as Mooney turned around to face appellant. Mooney yelled to his friends
that appellant had a knife. The five friends all ran for the car. Running backwards, Mooney
tripped over a parking curb, and fell. Appellant chased Mooney a short way on foot and then
positioned the truck that the three men were driving so that the five friends's car was pinned in. 
Appellant then got out of the truck, walked to the driver's-side-back-door of the car the five
friends were in, opened the door, said something to Fitch, and stabbed him repeatedly as Fitch
scrambled to the passenger side of the back seat. At the same time appellant approached the car,
Rodriguez went to the passenger's-side-back-door and opened it. Mooney, sitting next to the
door, jumped out of the back seat, struggling and holding Rodriguez's wrists trying to prevent
Rodriguez from hitting him over the head with a beer bottle. Saurenmann drove the car to pick
up Mooney who jumped into the car. The five friends drove immediately to the Brackenridge
Hospital emergency room to have Fitch's stab wounds examined.



STANDARD ON APPEAL


 When reviewing a challenge to the legal sufficiency of the evidence to support a
conviction, an appellate court must determine whether, when viewing the evidence in the light
most favorable to the conviction, any rational trier of fact could have found the essential elements
of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318-19 (1979);
Griffin v. State, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981). A reviewing court should not
substitute its determination of guilt for that of the fact finder unless it is found to be irrational or
unsupported by the evidence, such evidence being viewed under the standard set forth in Jackson. 
Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The jury decides whether to
believe or disbelieve a witness's testimony, and may reject any portion of a witness's testimony. 
Tex. Code Crim. Proc. Ann. art. 38.04 (West 1989); Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986). We do not sit as a thirteenth juror in assessing evidence, but rather position
ourselves as a final due process safeguard ensuring only the rationality of the fact finder. Moreno,
755 S.W.2d at 867.



ATTEMPTED MURDER


 By point of error one, appellant challenges the sufficiency of the evidence to
support his conviction for attempted murder. Appellant contends that the evidence failed to show
that he assaulted Fitch with the specific intent to commit the offense of murder.

 A person commits a criminal attempt if, with specific intent to commit an offense,
he does an act amounting to more than mere preparation that tends but fails to effect the
commission of the offense intended. Tex. Pen. Code Ann. § 15.01(a) (West 1994). The words
"with specific intent to commit an offense" mean that the accused must intend to bring about the
desired result which, in the case of attempted murder, is the death of the individual. Graves v.
State, 782 S.W.2d 5, 6 (Tex. App.--Dallas 1989, pet. ref'd) (citing Flanagan v. State, 675 S.W.2d
734, 741 (Tex. Crim. App. 1984)). To be convicted of attempted murder, the evidence must
show that the accused had the specific intent to kill. Id. Intent is a state of mind, and, as such,
must generally and necessarily be proven by circumstantial evidence. Consequently, intent may
be inferred from the acts, words, and conduct of the accused. Gardner v. State, 736 S.W.2d 179,
182 (Tex. App.--Dallas 1987), aff'd, 780 S.W.2d 259 (Tex. Crim. App. 1989).

 Appellant denies possessing the requisite specific intent to kill when he stabbed
Fitch. Appellant argues that, as he testified at trial, he only intended to wound Fitch. He stabbed
Fitch as a defensive measure because he thought Fitch was reaching for a gun under the seat of
the car. Additionally, appellant contends that the medical evidence showed that the stab wounds
were not near any of Fitch's vital organs, consequently Fitch was never in danger of dying. 

 The evidence showed that Fitch was seated in the back seat of the car. Appellant,
rather than leaving the area after the five friends ran back to their car, approached the car, opened
the back door, and began stabbing Fitch who was seated in the car. Fitch recalled being stabbed
by appellant five times. He was first stabbed in his arm. Fitch put his hands up in front of his
face to protect his face from appellant's stabbing. Appellant then stabbed him in the hand with
the knife going through his hand. Appellant continued to stab Fitch as he crawled across the back
seat trying to avoid appellant's stabbing. As Fitch was attempting to evade appellant's stabbing,
appellant stabbed him twice in the leg. Photographs of Fitch's stab wounds taken at the hospital
emergency room revealed that Fitch was stabbed once in the arm, twice in the hand, once in the
left leg, and once in the left hamstring. The evidence showed that at least two of the stabs were
aimed at his throat. If Saurenmann had not driven the car over the curb and driven away,
appellant would have continued to stab Fitch. Dr. Cullington, a plastic and reconstructive
surgeon, explained to the jury that the types of wounds suffered by Fitch are usually indicative
of the victim acting defensively.

 Despite appellant's testimony, when considering appellant's aggressive acts and
conduct, the manner of the attack, and the extent to which it was carried out, we conclude that
the evidence is sufficient to support the conviction for attempted murder. We overrule point of
error one.



AGGRAVATED ASSAULT


 By point of error two, appellant challenges the sufficiency of the evidence to
support his conviction for aggravated assault with a deadly weapon. Appellant contends that the
evidence failed to show that he knowingly and intentionally threatened Mooney with imminent
bodily injury.

 A person commits aggravated assault with a deadly weapon if the person
intentionally or knowingly threatens another with imminent bodily injury and the person uses or
exhibits a deadly weapon during the commission of the assault. Tex. Pen. Code Ann. §§ 22.01,
22.02 (West 1994). As we previously recognized, since intent is a state of mind, it is generally
proved by circumstantial evidence. Intent may be inferred from the acts, words, and conduct of
the accused. Gardner, 736 S.W.2d at 182.

 Appellant testified that he did not draw his knife until he believed Mooney and
Fitch had gone to retrieve a gun from their car. Mooney testified that after appellant told him that
he did not like the way he had touched his uncle, he "squared off" with appellant. Mooney stated
that appellant then pulled out his knife and flipped open the blade. Mooney explained that
appellant came at him with the knife after which he ran backwards to the car. Mooney said that
appellant raised the knife toward him a couple of times, raised it to his side a couple of times, and
swung the knife at him. Mooney explained that the reason that he was running backwards was
because he was afraid of appellant and thought that appellant might cause him bodily injury.

 Viewing the evidence in a light most favorable to the jury's verdict, we conclude
that the evidence is sufficient to support the conviction for aggravated assault with a deadly
weapon. We overrule point of error two.



CONCLUSION


 We affirm the judgments of conviction.


Before Chief Justice Carroll, Justices Aboussie and Kidd

Affirmed on Both Causes 

Filed: June 26, 1996

Do Not Publish

1.   Attempted murder is addressed in cause number 03-95-367-CR, and aggravated
assault is addressed in cause number 03-95-432-CR. 


y intended to wound Fitch. He stabbed
Fitch as a defensive measure because he thought Fitch was reaching for a gun under the seat of
the car. Additionally, appellant contends that the medical evidence showed that the stab wounds
were not near any of Fitch's vital organs, consequently Fitch was never in danger of dying. 

 The evidence showed that Fitch was seated in the back seat of the car. Appellant,
rather than leaving the area after the five friends ran back to their car, approached the car, opened
the back door, and began stabbing Fitch who was seated in the car. Fitch recalled being stabbed
by appellant five times. He was first