

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-12-00118-CR

_____

GIOVANNI BORRERO, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 76th District Court
Titus County, Texas
Trial Court No. 17,812

_____

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

## MEMORANDUM OPINION

On April 10, 2011, after the tractor-trailer rig driven by Giovanni Borrero was stopped along a Titus County stretch of Interstate Highway 30 for travelling three miles per hour over the stated speed limit, Corporal Charles Cannon of the Texas Department of Public Safety conducted a consensual search and found over a ton of marihuana hidden under other produce in the trailer. This appeal of Borrero's resulting conviction[1] for possession of that marihuana turns on whether there was legally sufficient evidence that Borrero knowingly possessed the marihuana. Because we conclude that legally sufficient evidence supports that key finding, we affirm the judgment of the trial court.

In evaluating legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trial court's judgment to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of *Brooks*, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).

---

[1]After a jury trial, Borrero was convicted and sentenced to twenty-five years' imprisonment and assessed a $5,000.00 fine.

The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id*.

Borrero was guilty, as charged in the indictment, if he: (1) knowingly (2) possessed more than 2,000 pounds (3) of marihuana. TEX. HEALTH & SAFETY CODE ANN. § 481.121(b)(5) (West 2010). "To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). Borrero contends that the evidence is insufficient to support findings that he had knowledge of the contraband and that he exercised control over it.

Mere presence at a location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006). When the accused is "not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband." *Poindexter*, 153 S.W.3d at 406 (quoting *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981)); *see Jones v. State*, 963 S.W.2d 826, 830 (Tex. App.—Texarkana 1998, pet. ref'd). Although Borrero was alone in the truck at the time of the search, the evidence is that the truck did not belong to him and that others had had access to the truck in the recent past. The truck cannot be said to have been "in his exclusive possession." To reason otherwise would mean that any individual driving a borrowed vehicle, or one others had

used or accessed, was automatically responsible for anything that might be in the vehicle, whether or not there was any reason for the person to know.

A nonexclusive list of factors that can be sufficient, either singly or in combination, to establish someone's possession of contraband include: (1) his or her presence when a search is conducted, (2) whether the contraband was in plain view, (3) his or her proximity to and the accessibility of the contraband, (4) whether he or she was under the influence of narcotics when arrested, (5) whether he or she possessed other contraband or narcotics when arrested, (6) whether he or she made incriminating statements when arrested, (7) whether he or she attempted to flee, (8) whether he or she made furtive gestures, (9) whether there was an odor of contraband, (10) whether other contraband or drug paraphernalia were present, (11) whether he or she owned or had the right to possess the place where the drugs were found, (12) whether the place where the drugs were found was enclosed, (13) whether he or she was found with a large amount of cash, (14) whether his or her conduct indicated a consciousness of guilt, (15) whether he or she made incriminating statements connecting himself or herself to the contraband, (16) the quantity of the contraband, and (17) whether he or she was observed in a suspicious area under suspicious circumstances. *Evans*, 202 S.W.3d at 162 n.12; *Hargrove v. State*, 211 S.W.3d 379, 385–86 (Tex. App.—San Antonio 2006, pet. ref'd); *Muckleroy v. State*, 206 S.W.3d 746, 748 n.4 (Tex. App.—Texarkana 2006, pet. ref'd); *Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *Kyte v. State*, 944 S.W.2d 29, 31 (Tex. App.—Texarkana 1997, no pet.); *see Jones*, 963 S.W.2d at 830. The number of links is not dispositive; rather, we

4

look to the "logical force of all of the evidence, direct and circumstantial." *Evans*, 202 S.W.3d at 162. In this case, most of the factors set out above do not apply.

Shortly after Cannon stopped Borrero in the truck, Cannon requested, and Borrero produced, the truck's log book and papers. Borrero said he was coming from McAllen, but then changed his answer to Brownsville. He initially said the truck was his, but then said he was just an employee of the company. According to Borrero, he said he did not intend to mislead the officer and he explained to Cannon that "George owns the truck" and that he, Borrero, worked "for a company called Kholy Transportation out of Homestead."

Cannon noticed that Borrero frequently broke eye contact as he answered questions and that he was breathing heavy and his neck was becoming flushed and red. Borrero was very nervous throughout the stop, even after Cannon informed him he would only receive a warning rather than a citation. Borrero testified that he was nervous because he was afraid of being arrested as he was ". . . out on bond out of Florida, and you know, I was not supposed to be leaving the state, out of Florida. I had a charge down in Florida." He also had some unpaid traffic tickets in Val Verde.

Borrero produced a bill of lading for the load in the trailer. According to the bill, the trailer was carrying cilantro, jalapeño, and nopal[2] from Romeo Esparza Produce in Brownsville, Texas. He told Cannon that he received this load the day before, April 9, and he was delivering it to Chicago. Borrero told Cannon that he personally watched his trailer get loaded and that he had been with his truck this entire trip.

---

[2]Nopal is also known as "Prickly Pear" cactus.

The Trooper asked for and received Borrero's permission to search the truck and trailer. Further raising Cannon's suspicions, when Borrero granted permission to search, Borrero took his necklace, which contained a picture of Borrero's daughter, kissed it and dropped it back into his shirt. Borrero carried the chain everywhere with him, and he testified that he kissed it because he was afraid of being arrested for leaving the state of Florida while he was out on bond.

At Cannon's request, Borrero drove the truck to a nearby Walmart parking lot, where the trailer was searched. During the search, 184 bags of a green, leafy plant substance—marihuana—wrapped in plastic were found hidden beneath some other produce. Once the marihuana was found, Borrero became relaxed and calm and looked defeated. He was cited for falsifying his log book and either having no inspection certificate or an expired certificate.

At trial, Esparza testified that he is in the okra packing business and had been for eighteen years. His company does not work with cilantro, jalapeno, or nopal. He testified that he does not ship to Chicago and generally did not ship anything in April. Esparza testified that the bill of lading Borrero had was fraudulent.

Borrero testified in his own defense. He admitted to making false entries in his log book. After getting the directions to the warehouse from his boss, he drove there and picked up the load. He said the warehouse was "in between McAllen and Brownsville somewhere." He thought the warehouse was "in the city of Pharr. It was off of Monte Christo Boulevard. That's about it." He said he stayed in the cab of the truck while two or three men loaded the trailer.[3] The men who loaded the truck gave him the bill of lading for the load. Borrero looked at the

_____

[3]Compare that with Cannon's testimony that Borrero claimed he watched while his trailer was loaded.

load in the trailer and said, "It looks fine to me." He said he knew nothing about Romeo Esparza Produce Company. Borrero specifically denied having any knowledge of the marihuana found in the trailer.

Borrero was driving a truck he did not own. He claimed it was loaded at a warehouse somewhere between Brownsville and McAllen by two or three other men. By his own admission, though, Borrero had sole possession of the vehicle during the trip, was present while the trailer was loaded, and was with the vehicle the entire trip. From the above facts, a reasonable jury could infer that he knowingly exercised control over the contraband in the trailer.

Borrero was very nervous throughout the stop, even after Cannon indicated he would receive only a warning. There is evidence Borrero was unfamiliar with some of his paperwork, as it took him a while to find his insurance and registration. Borrero produced the bill of lading for the produce in the trailer, but it was later discovered to be falsified, as noted above. Cannon asked for, and was given, permission to search the vehicle, and the marihuana was found concealed beneath other produce in the load.

Thus, there is evidence supporting the theory that Borrero was acting as a courier for someone, moving concealed contraband from one state to another. Borrero's extreme nervousness is consistent with knowledge he was so engaged.

Proof of a culpable mental state relies generally on circumstantial evidence, and thus proof of knowledge is an inference drawn by the fact-finder from all the surrounding circumstances. *Gardner v. State*, 736 S.W.2d 179, 182 (Tex. Crim. App. 1987). Mental states are almost always inferred from acts and words. The mental culpability of a defendant is of such

7

a nature that it generally must be inferred from the circumstances in which a prohibited act or omission occurs. A mental state is concealed within the mind of an individual and can be determined only from his or her words, acts, and conduct. *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998). All of the evidence taken together would allow a jury to find that Borrero had the requisite knowledge that he was in possession of contraband. The evidence is sufficient to support the verdict.

We affirm the judgment of the trial court.


Josh R. Morriss, III
Chief Justice

Date Submitted:     March 12, 2013
Date Decided:       April 4, 2013


Do Not Publish