Sam Edward EAGLIN, Appellant,

v.

The STATE of Texas, Appellee.

No. 09–92–203 CR.

Court of Appeals of Texas,
Beaumont.

March 16, 1994.

James R. Makin, Beaumont, for appellant.

Tom Maness, Dist. Atty., John R. Dewitt, Asst. Dist. Atty., Beaumont, for state.

Before WALKER, C.J., and BROOKSHIRE and BURGESS, JJ.

## OPINION

WALKER, Chief Justice.

This is an appeal from a conviction for the felony offense of Possession of a Controlled Substance. Appellant's indictment included enhancement paragraphs raising appellant's punishment exposure to that of a habitual offender. TEX.PENAL CODE ANN. § 12.42(d) (Vernon Supp.1994). The jury found appellant guilty of unlawfully possessing cocaine as alleged in the indictment. Appellant pleaded "true" to the enhancement allegations and the trial court assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of fifty (50) years. Appellant presents two points of error for our review, viz:

Point of Error One: The trial court erred in holding the evidence sufficient to sustain the conviction, because the evidence was insufficient to prove "possession" as alleged in the indictment.

Point of Error Two: The trial court erred in failing to grant appellant's timely motion for mistrial because of prejudicial conduct of the prosecuting attorney in persistently disregarding the court's rulings.

As appellant raises the issue of insufficient evidence to sustain the conviction, an examination of the facts in the light most favorable to the verdict is in order. The State's first witness was Detective Patrick Powell of the Jefferson County Narcotics Task Force. Detective Powell was one of several members of the narcotics unit that executed a search warrant at the Gant Apartments in Port Arthur on January 30, 1992. The specific apartment involved was apartment 13. Cocaine was listed in the search warrant as the contraband to be sought. Through Detective Powell's search of the premises, three items containing cocaine were discovered. State's Exhibit 8 was a matchbox that was found atop some wooden beams above a water heater located inside a closet. The matchbox contained a number of off-white "rocks" later tested and found to be cocaine. State's Exhibit 9 was white powder residue and a razor blade located on a plate that Detective Powell discovered on top of cabinets in the rear of the kitchen. State's Exhibit 10 was a plastic bag containing a large number of off-white rocks. Both State's Exhibit 9 and State's Exhibit 10 also tested positive for cocaine. The combined weight of State's Exhibits 8, 9, and 10 totaled 11.87 grams. From Detective Powell's testimony, it is apparent that none of the items of contraband were either in plain view or easily accessible.

When the search warrant was executed, appellant and his wife, Judy, were seated in the "living and dining area" of the apartment. They were the only individuals present in the apartment when the search was conducted. Subsequent to the finding of the contraband, appellant was searched incident to his arrest. Appellant was found to have $1000 in currency on his person. The State also introduced into evidence a current utility bill from Gulf States Utilities.[1] The bill was addressed to appellant at "4800 Seventh

Street, No. 13." This was the address of the apartment in question. Along with the utility bill, the State introduced a utility receipt for a bill paid on "NOV 26 '91." The receipt is also in appellant's name, however the address is written as "4800 7th # 15."[2]

Further testimony from Detective Powell included the fact that Apartment 13 contained two separate bedrooms. In one of the bedrooms, which was apparently occupied on a regular basis, both men's and women's clothing were found. The second bedroom contained items apparently consistent with belonging to a "young teenager." Judy did not attempt to communicate with the officers at the scene of their arrest.

The appellant called his wife, Judy, to testify in his behalf. Judy testified that appellant knew nothing of the contraband found by the narcotics unit. She admitted that she had already pleaded guilty to possessing said contraband and that it all belonged to her as she was selling it out of her apartment. Judy further testified that appellant did not live at the Gant Apartments and was only at her apartment when the raid occurred because she was having problems with her son, Earl, and appellant "could always help me with Earl." Through Judy's testimony, it was also learned that appellant had been to the penitentiary, and on cross-examination she admitted that said incarceration of appellant was for possession of a controlled substance.

On cross-examination, Judy also testified to the fact of her heroin addiction, and to the fact that she would occasionally combine both heroin and cocaine powder into an injectable mixture which she used. She further admitted that she failed to proclaim appellant's innocence to the authorities on the night of the raid, or to her presentence investigation officer. At one point during Judy's cross-examination, the State introduced into evidence State's Exhibit 16, a letter addressed to Robert Cartwright who Judy recognized as a narcotics detective with the Port Arthur

---

1. The billing dates on the face of the bill were from December 24, 1991 to January 24, 1992. The billing period ended only six days prior to the execution of the search warrant.

2. The account number listed on the bill was not the same as the one listed on the receipt.

Police Department. The letter was in appellant's handwriting. The letter contains the following:

Robert Cartright

Sam E. Eaglin

Cell–383

Dear Robert

To Began With Let Me Say, I Know This Letter May Come As A Surprize To You, But I Do Need To Talk To You Robert, First Let Me Say, I Talked To Oral Mitchell, Now Robert I Need Help, I Also Tole Judy Gale I Was Going To Talk To You, Now I Know What I Have To Do, And I'am Sure You Know I Can Do It, Now Oral Tole Me He Didnot Do What You Ask, I'am Willing To Sign Paper's Or What Ever, If I Dont Come Through, You Can Lock Me Up, And Throw Away The Key, Robert My Back Is Up Against The Wall, I Can Do What You Need Done, Now I Have Talked To My Parole officer, I Tole Them I Was Willing To Do What It Takes To Get Me Out of Hear, A Mrs *Provost,* But Please Come Talk To Me Before Friday. I Can Get That Houston Bunch For You, And Everything In This County, But I Need To See You Before Friday, Also I Can Work With Oral, But I'am For Real Robert,

Respectfully!!

Sam Eaglin

383

(sic et passim) (emphasis in original)

Further cross-examination of Judy elicited the fact that while she and appellant were sitting in a patrol unit following their arrest, their conversation was being recorded. Judy admitted that she asked appellant "to try to take the case" for her.

In rebuttal, the State called Earl Fontenot, Judy's son. The entirety of Earl's testimony, including cross-examination, is as follows:

Q. (the State) Would you please state your full name for the record.

A. Earl Damian Fontenot.

Q. Mr. Fontenot, how old are you?

A. 16.

Q. Are you the son of Judy Gail Fontenot Eaglin?

A. Yes, sir.

Q. And on January the 30th of this year, 1992, your mother was arrested together with her common-law husband, Sam Eaglin; is that correct?

A. Yes, sir.

Q. Your mother has pled guilty to possession arising from that arrest and has testified today that all the cocaine in the house—or in the apartment was hers and that she was selling it. Is that true?

A. She was selling cocaine, but all the cocaine probably wasn't hers.

Q. Who did the cocaine in the apartment belong to?

A. Sam Eaglin.

MR. RODRIGUEZ: Pass the witness, Your Honor.

*CROSS–EXAMINATION*

*BY MR. MAKIN:*

Q. Mr. Fontenot, where are you currently at?

A. Juvenile Detention.

Q. What are you up there for?

A. Three counts of attempted murder and criminal mischief.

Q. Have you and Sam Eaglin ever got along?

A. Yes, sir.

Q. You-all have?

A. Yes, sir.

Q. You haven't had any problems with him?

A. No. He was being a father to me.

Q. Did you ever threaten to kill him?

A. No.

Q. You haven't done that.

A. No, sir.

Q. Have you been made any promises for your testimony?

A. No, sir.

MR. MAKIN: Nothing further.

MR. RODRIGUEZ: Nothing further of this witness, Your Honor.

THE COURT: Thank you. That's all.

A challenge to the trial court's "holding the evidence sufficient to sustain the conviction" is actually a challenge to the sufficiency of the evidence to support the conviction. *See Madden v. State,* 799 S.W.2d 683, 686 (Tex. Crim.App.1990), *cert. denied,* 499 U.S. 954, 111 S.Ct. 1432, 113 L.Ed.2d 483 (1991). The standard for reviewing questions of evidentiary sufficiency is for the reviewing court to view all of the evidence in the light most favorable to the "guilty" verdict and then determine whether any rational trier of fact could have found each of the essential elements of the offense to have been proven beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154 (Tex.Crim.App.1991). In the instant case, almost all of the evidence of appellant's criminal culpability is circumstantial. Since the trial began on September 9, 1992, our appellate review of the evidence, specifically whether appellant unlawfully possessed the contraband, will not involve the "alternative reasonable hypothesis" construct rejected in *Geesa.* This translates into forgoing from our analysis of the evidence whether or not the State eliminated every reasonable hypothesis other than appellant's guilt in circumstantially proving their case. *Rogers v. State,* 846 S.W.2d 883, 885 (Tex.App.—Beaumont 1993, no pet.)

■■■ "Circumstantial evidence" has been defined as direct proof of a secondary fact which, by logical inference, demonstrates the ultimate fact to be proven. *Taylor v. State,* 684 S.W.2d 682, 684 (Tex.Crim.App.1984). In order to prove unlawful possession of a controlled substance, the State must prove the accused 1) exercised actual care, custody, control, or management over the contraband, *and* that 2) the accused knew the substance he possessed was contraband. *See Martin v. State,* 753 S.W.2d 384 (Tex.Crim.App.1988). Possession of contraband need not be exclusive, and evidence which shows that the accused jointly possessed the contraband with another is sufficient. *McGoldrick v. State,* 682 S.W.2d 573, 578 (Tex.Crim.App.1985). However, the mere presence of the accused at the scene of an offense or even knowledge of an offense does not make one a party to

joint possession. *Rhyne v. State,* 620 S.W.2d 599, 601 (Tex.Crim.App.1981).

Appellant argues that where the accused is not shown to be in exclusive control or possession of the place where the contraband is found, it cannot be concluded that he had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband, citing *Deshong v. State,* 625 S.W.2d 327 (Tex.Crim. App.1981). An enlightening discussion of the genesis of the "affirmative links" concept is provided by former Presiding Judge John Onion in *Castellano v. State,* 810 S.W.2d 800 (Tex.App.—Austin 1991, no pet.), a pre-*Geesa* case. We quote:

> The phrase "affirmative link" in connection with narcotic drug cases apparently appeared for the first time in Texas in *Haynes v. State,* 475 S.W.2d 739, 742 (Tex. Cr.App.1971). The cases therein cited did not use the term. *Haynes* was followed by *Payne v. State,* 480 S.W.2d 732, 734 (Tex. Cr.App.1972) and a legion of other narcotic cases using. the term and requiring an affirmative link. This requirement appears to have originated as an outgrowth of the Court of Criminal Appeals' approach to a sufficiency review in circumstantial evidence cases; unless the defendant is "affirmatively" linked to the drugs or narcotics, there will be an outstanding reasonable hypothesis that the defendant did not possess the contraband at all, or at least did not know the item he possessed was of a forbidden nature, and therefore the conviction can not stand.

*Castellano,* 810 S.W.2d at 805–806.

■■ If indeed "affirmative link" analysis of evidence is merely a function of the "reasonable hypothesis analytical construct," which itself was expressly abrogated in *Geesa,* then any "affirmative link" analysis, for appellate review purposes, must also surrender any further viability. Though having stated as much in *Rogers,* 846 S.W.2d at 885, this Court, particularly this writer, has nevertheless continued to engage in selective "affirmative link" analyses. *See Watson v. State,* 861 S.W.2d 410 (Tex.App.—Beaumont 1993, pet. ref'd). So that there is no further confu-

sion as to this Court's position on the matter, we hold that "affirmative link" analysis is no longer appropriate for appellate review of evidentiary sufficiency in circumstantial evidence cases in light of *Geesa.* We further wish to reiterate our holding in *Rogers* that "[t]he sole standard by which we review the evidence is that stated in *Jackson v. Virginia.*" *Rogers*, 846 S.W.2d at 885.

■ We find, after considering all of the evidence in the light most favorable to the verdict, that any rational trier of fact could have found that appellant intentionally or knowingly possessed the contraband in question beyond a reasonable doubt. In circumstantial evidence cases, it is not necessary that every fact point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating evidence. *Russell v. State*, 665 S.W.2d 771, 776 (Tex.Crim.App.1983), *cert. denied*, 465 U.S. 1073, 104 S.Ct. 1428, 79 L.Ed.2d 752 (1984). Simply because a defendant presents a different version of the events does not render the evidence insufficient. *Little v. State*, 758 S.W.2d 551, 562–563 (Tex.Crim. App.), *cert. denied*, 488 U.S. 934, 109 S.Ct. 328, 102 L.Ed.2d 346 (1988).

■ In the instant case the two issues of *control* and *knowledge* of the contraband in question may be inferred from the evidence presented by both the State and the appellant. Proof of appellant's knowledge of the "forbidden nature" of the cocaine was demonstrated by the testimony from his wife regarding the fact that appellant had just recently been to prison for possession of cocaine, and by the content of and the circumstances surrounding appellant's handwritten letter to the narcotics detective, Robert Cartwright. Appellant's control over Apartment 13, and therefore over the contraband contained within Apartment 13, was demonstrated by the presence of the current GSU bill addressed to appellant at Apartment 13, by the presence of mens' clothing in one of the bedrooms that was apparently in current use, by appellant himself being present in Apartment 13 when the raid took place, and by the fact that there was no statement made by appellant's wife, Judy, following appellant's

arrest, that appellant did reside at Apartment 13 or that appellant had no knowledge of the contraband. The $1,000 found on his person at the time of his arrest could also be taken by the jury as an inference of appellant trafficking in, and therefore in control of, the contraband in question. Finally, Earl Fontenot flatly testified that the contraband belonged to appellant.

■ It has been held that proof of a culpable mental state generally relies upon circumstantial evidence. *Gardner v. State*, 736 S.W.2d 179, 182 (Tex.App.—Dallas 1987), *aff'd*, 780 S.W.2d 259 (Tex.Crim.App.1989). Therefore, proof of intentional or knowing possession is an inference drawn by the trier of fact from *all* of the circumstances. *See Dillon v. State*, 574 S.W.2d 92, 94–95 (Tex. Crim.App.1978). It is axiomatic that, in the instant case, as sole trier of the facts, the jury could believe whatever evidence it chose to believe and reject the evidence it chose to reject. This Court may not sit as a thirteenth juror and disregard or reweigh the evidence. *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988). As such, we reiterate our finding that the evidence in the instant case, taken in the light most favorable to the verdict, would permit any rational trier of fact to have found all of the essential elements proven beyond a reasonable doubt. Point of error one is overruled.

Appellant's second point of error appears to complain that the cumulative effect of the presentation of "extraneous offenses" by the State at various points during the trial was so prejudicial to appellant that reversal is required despite the fact that the trial court sustained each objection by appellant and instructed the jury to disregard the mention of the "extraneous offenses." Appellant points to the State's attempt to improperly inject evidence of the presence of a handgun and some marijuana in Apartment 13 at the time of the raid.

■ With regard to the handgun, appellant's brief refers to two instances in which the State mentioned said weapon with appellant's timely objections being sustained, and with appropriate instructions to the jury to disregard. The State points to the fact that

during a voir dire examination of Detective Powell by appellant's trial counsel regarding the tendering of several photographs into evidence by the State, the following testimony was elicited:

Q. (counsel for appellant) I'm handing you State's Exhibit 14 (photograph). Is this the location of the gun?

A. (Powell) Yes, sir.

Q. And it was found just laying in that drawer just like that.

A. Yes, sir.

Q. It wasn't covered up or anything.

A. No, sir.

Q. Was the drawer open when you went in the room?

A. It was when I went in the room.

Q. So, you were not the first person in there.

A. No, sir.

Q. So, you do not know whether the gun was covered up or was found—

A. (Interrupting) This is the way it was when it was called to my attention.

Even though appellant points to two objections raised during the trial when evidence of the handgun was proffered by the State, appellant cured any possible error when he himself elicited testimony concerning the presence of the weapon in Apartment 13. *Johnson v. State*, 803 S.W.2d 272, 290 (Tex. Crim.App.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2914, 115 L.Ed.2d 1078 (1991), *overruled on other grounds by Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991). The record reflects that the above quoted voir dire testimony of Detective Powell was sandwiched between appellant's two objections. Appellant has waived any error with regard to the State's alleged prejudicial injection of the evidence of the handgun.

■■■ As for the marijuana evidence, the record does not reflect any further attempt by the State, after appellant's initial objection to State's Exhibit 1, to inject evidence of its existence within Apartment 13. The portion of appellant's brief alleging the State's continued questioning of Detective Powell about the marijuana takes the State's question completely out of context. The record

reflects that, out of the jury's presence, the State explained that the "other suspected controlled substance" to which he was referring was State's Exhibit 9, the white powder cocaine residue. Since the subject of the search warrant was cocaine, the trial court freely permitted testimony concerning said powder residue. This apparent misunderstanding still netted appellant an instruction to the jury by the trial court to "disregard any reference to any controlled substance other than cocaine." Except in extreme cases, if the trial court sustains a timely objection and instructs the jury to disregard a reference to an extraneous offense, the error is cured. *Moody v. State*, 827 S.W.2d 875, 890 (Tex.Crim.App.), *cert. denied*, —— U.S. ——, 113 S.Ct. 119, 121 L.Ed.2d 75 (1992). Considering that the jury heard of appellant's prior stint in the penitentiary as well as the contents of his handwritten letter to Robert Cartwright, even if the jury understood the prosecutor's question as referencing the presence of the marijuana, we do not see it as an error so extreme that a prompt instruction to disregard would not cure it. Point of error two is overruled; the judgment and the sentence of the trial court are affirmed.

AFFIRMED.

BURGESS, Justice, concurring.

I concur in the result only. Because Earl Fontenot's testimony that the cocaine belonged to Sam Eaglin is *direct* evidence, the discussion of "circumstantial evidence", "affirmative link" and "alternate reasonable hypothesis" is unnecessary. I will withhold discussion until the issue is dispositive.