In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-00-495 CR


____________________



DELVIN WAYNE JACKSON, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the 252nd District Court


Jefferson County, Texas


Trial Court No. 81284






O P I N I O N



 Delvin Wayne Jackson was convicted of third degree felony possession of a
controlled substance. Tex. Health & Safety Code Ann. § 481.115(c) (Vernon Supp.
2002). His sentence, enhanced by a prior felony conviction, was twenty years. On appeal
he raises two points of error: the admissibility of expert testimony and the legal
sufficiency of the evidence to support the conviction. 

 We will address first his challenge to the legal sufficiency of the evidence. In
evaluating the legal sufficiency of evidence, we view the evidence in the light most
favorable to the verdict and determine whether any rational trier of fact could have found
the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443
U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We consider all evidence
presented at trial, although we may not re-weigh the evidence and substitute our judgment
for that of the jury. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

 In order to sustain a conviction for possession of a controlled substance, the State
must prove that appellant exercised actual care, control, or management over the
contraband and that appellant knew that the substance in his possession was contraband.
Tex. Health & Safety Code Ann. § 481.002(38) (Vernon Supp. 2002); see also King
v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). Jackson contends that the State
completely failed to meet this burden. 

 Jackson was a passenger in a car stopped by police. The arresting officer testified
that when the driver stepped out of the car, he dropped a chunk of "off- white colored
rock," suspected of being crack cocaine. When the officer examined the front seat of the
car, there were "shavings" and a small "rock," also suspected to be crack, on the front
bench seat, between where Jackson and the driver had been sitting. A forensic analyst
confirmed that the substance seized by the officer was cocaine, "indicative of the base
form" with a weight of 2.37 grams. It appears from the arresting officer's testimony that
the amount of cocaine for which Jackson was indicted -- more than one but less than four
grams -- includes both the cocaine found on the car seat and the larger chunk dropped by
the driver. Underneath the passenger seat where Jackson had been seated, the officer also
found three boxes of cigars, one of which was opened. The opened box contained a plastic
bag containing 14.93 grams of marijuana. A razor blade was also found in the open cigar
box. On his person, Jackson had $1,180.00 in cash, including eight separate $140 "sets,"
each consisting of one $100 dollar bill and two $20 bills. 

 The jury also heard testimony from Jim Huebel, an investigator with the Jefferson
County District Attorney's Office. Huebel, testifying as an expert witness, was asked
whether he had ever encountered "two individuals possessing or working together to
possess crack cocaine[.]" He replied "Yes." He further testified:

 In that scenario, which is very common, you'll have one person who is
maybe -- you call him the leader of the two . . . . Usually that person will
maintain the money -- the profits made off of the sales, but he'll have a
lower level dealer who he's working in concert with actually handle the
drugs . . . at the direction of the other person who is carrying the money. 

 

 Huebel also testified as follows, based on his professional experience: 


 [I]t's very common to find people that have cash along with drugs have their
money bundled -- usually divided up into say, as an example, if it's $1,000,
usually $100 increments. They'll have say five twenties with a rubber band
around it and then another, another and another total of one thousand. And
I think this is done so that person has quick access to see how much money
he's got whereas maybe you and I would have to look in our wallets and dig
around to see how much money we've got. 


Huebel was then asked a hypothetical question that mirrored the arresting officer's
testimony about the drugs and money found in the car during Jackson's arrest. He replied
that: 

 [G]iven that you've got drugs and you've got a large amount of money on
the other person, I would feel that they're related.

 Q. Okay. Particularly if that money is packaged in the way that you
described.

 A. Especially if the money is that way. 


Huebel also testified that crack cocaine was usually cut up with razor blades. The jury had
heard testimony that the opened cigar box underneath Jackson's seat contained a razor
blade. 

 Possession of narcotics need not be exclusive possession; evidence that the accused
possessed the drugs jointly with another is sufficient to support conviction. See Watson
v. State, 861 S.W.2d 410, 412 (Tex. App.--Beaumont 1993, pet. ref'd). However, when
the accused is not in exclusive possession of the premises, for example, where contraband
is found, additional facts and circumstances must affirmatively link the accused to the
contraband. See Herndon v. State, 787 S.W.2d 408, 409-410 (Tex. Crim. App. 1990). 

 This court relies on a list of factors to evaluate whether evidence in drug possession
cases in which the defendant is not in exclusive possession of the premises meets the Jackson
v. Virginia standard. We consider whether (1) the contraband was in plain view; (2) the
accused was the owner of the car in which the contraband was found; (3) the accused was
the driver of the automobile in which the contraband was found; (4) the contraband was
conveniently accessible to the accused; (5) the contraband was found on the same side of the
car seat as the accused was sitting; (6) the strong odor of the drug was present; (7)
paraphernalia to use the contraband was in view of or found on the accused; (8) the physical
condition of the accused indicated recent consumption of the contraband found in the car; (9)
conduct by the accused indicated a consciousness of guilt; (10) the accused had a special
connection to the contraband; (11) the place where the contraband was found was enclosed;
(12) occupants of the automobile gave conflicting statements about relevant matters; (13)
affirmative statements connect the accused to the contraband. See Dixon v. State, 918 
S.W.2d 678, 681 (Tex. App.-- Beaumont 1996, no pet.). 

 The number of factors present is less important than the logical force the factors, alone
or in combination, have in establishing the elements of the offense. Howell v. State, 906
S.W.2d 248, 253 (Tex. App.--Fort Worth 1995, pet. ref'd.). In addition, this list is not
exclusive; "proof of intentional or knowing possession is an inference drawn by the trier of
fact from all of the circumstances." See Eaglin v. State, 872 S.W.2d 332, 337 (Tex. App.--
Beaumont 1994, no pet.), overruled on other grounds, Brown v. State, 911 S.W.2d 744, 748
(Tex. Crim. App. 1995). In Eaglin, for example, we held that $1,000 in cash found on
Eaglin's person could be taken by the jury as evidence that Eaglin was "trafficking in, and
therefore in control of, the contraband . . . ." Eaglin, 872 S.W.2d at 337. Other courts of
appeals have agreed that possession of unusually large sums of cash can be considered an
affirmative link with contraband. Dade v. State, 956 S.W.2d 75, 78-79 (Tex. App.--Tyler
1997, pet. ref'd); Ettipio v. State, 794 S.W.2d 871, 874 (Tex. App.--Houston [14th Dist.]
1990, pet. dism'd). Jackson was not in exclusive possession of the car. However,
additional facts and circumstances affirmatively link him to the cocaine: the fact that the
small rock and scrapings were in plain view; the fact that they were "conveniently
accessible" to Jackson; and the fact that the front seat of the car was, obviously, an
"enclosed area." See Dixon, 918 S.W.2d at 681. The jury heard Huebel's testimony that,
when two people possess crack cocaine jointly, one will often hold the drug while the other
holds the money and that the way Jackson's cash was sorted into "sets" was common
among those found in possession of drugs. The jury also heard that crack cocaine was
usually cut up with a razor blade, and that the cigar box under Jackson's seat contained a
razor blade. This evidence, taken in the light most favorable to the verdict, affirmatively
linked appellant to the knowing possession of the cocaine. Jackson's second point of error
is overruled. 

 Jackson's remaining point of error challenges the admissibility of Huebel's
testimony. Before Huebel testified, Jackson objected to his proffered testimony as
unreliable, citing Daubert v. Merrell-Dow Pharms., Inc., 509 U.S. 579, 113 S.Ct. 2786,
125 L.Ed.2d 469 (1993), E. I. du Pont de Nemours & Co. v. Robinson, 923 S.W.2d 549
(Tex. 1995), and Gammill v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713 (Tex. 1998). 
Jackson stated that he was challenging the relevance and reliability of Huebel's proffered
testimony seeking to connect the money in Jackson's possession with the drugs. Outside
the presence of the jury, Huebel was questioned extensively by both Jackson and the State.
At the conclusion of this exchange, Jackson again objected to Huebel's proposed testimony
on the grounds that the State had not established the reliability of Huebel's observations
about drug possessors operating in pairs and sorting money by "sets." The trial court
overruled the objection, but held that Huebel's testimony would be admissible only as it
pertained to issues regarding drug possession, rather than delivery. Jackson later cross-examined Huebel as to whether his observations had "been published in books" or 
"treated with any scientific acceptability[.]"

 A trial court's decision to admit expert testimony will not be disturbed on appeal
absent an abuse of discretion. Alvarado v. State, 912 S.W.2d 199, 216 (Tex. Crim. App.
1995). Police officers with pertinent training or experience may qualify to give testimony
both under Rule 701 (opinion testimony by lay witnesses) and Rule 702 (expert testimony)
of the Texas Rules of Evidence. See Thomas v. State, 916 S.W.2d 578, 580-581 (Tex.
App.--San Antonio 1996, no pet.); see also Austin v. State, 794 S.W.2d 408, 410-411
(Tex. App.--Austin 1990, pet. ref'd). A witness may be qualified to testify both under
Rule 702 because of his superior experiential capacity and under Rule 701 if his testimony
and opinion are based on first hand knowledge. Yohey v. State, 801 S.W.2d 232, 243
(Tex. App.--San Antonio 1990, pet. ref'd). 

 A police officer's hands-on experience can constitute the "special knowledge"
required of an expert witness by Rule 702. Ventroy v. State, 917 S.W.2d 419, 422 (Tex.
App.--San Antonio 1996, pet. ref'd). Thomas, Austin, Yohey, and Ventroy all affirmed the
threshold relevance and reliability of expert testimony proffered by police officers who,
like Huebel, based their testimony on street-level observations of criminal behavior. A
trial court does not err in admitting testimony from police officers which is based on "their
own personal observations and experiences as [police] officers." Southwick v. State, 701
S.W.2d 927, 930 (Tex. App.--Houston [1st Dist.] 1985, no pet.). Huebel's testimony was
relevant because, as noted earlier, possession of unusual amounts of money can be
considered an affirmative link with knowing possession of contraband. Dade, 956 S.W.2d
at 78-79. Jackson's objection to the testimony -- for example, Jackson's observation that
members of the general population also travel in pairs and organize money in their wallets 
-- goes to the weight, rather than the admissibility, of Huebel's testimony. Yohey, 801
S.W.2d at 243. Point of error one is overruled.


 The judgment of the trial court is affirmed.

 AFFIRMED.

 PER CURIAM

Submitted on January 4, 2002

Delivered on March 13, 2002

Do Not Publish


Before Walker, C.J., Burgess, and Gaultney, JJ.