

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| ROBERTO ESPARZA, | § | |
| | | No. 08-12-00007-CR |
| Appellant, | § | |
| | | Appeal from the |
| v. | § | |
| | | Criminal District Court No. 1 |
| THE STATE OF TEXAS, | § | |
| | | of El Paso County, Texas |
| Appellee. | § | |
| | | (TC#20100D00656) |
| | § | |

## **O P I N I O N**

Appellant, Roberto Esparza, was indicted for intentionally and knowingly possessing 50 pounds or less but more than 5 pounds of marijuana. Appellant pleaded not guilty and the jury found Appellant guilty as charged in the indictment. In accordance with an agreement with the State, the trial court assessed punishment at five years' imprisonment, probated for five years and a $1,000 fine. In two issues on appeal, Appellant challenges the sufficiency of the evidence and contends that he received ineffective assistance of counsel. We affirm.

## BACKGROUND

On January 29, 2010, U.S. Customs and Border Protection (CBP) Officers Armando Valle and Socorro Quintana[1] were conducting preprimary operations[2] at the Paso Del Norte Bridge.

---

[1] At trial, CBP Officer Socorro Tomei testified she had been married for two years and that her maiden name was Quintana. In this opinion we will refer to Officer Tomei as Officer Quintana.
[2] According to Officer Valle, during preprimary officers look for and inspect vehicles before they reach the inspection

That day, the officers' attention was drawn to a red Saturn on the Mexican side of the border because the vehicle was extremely clean. The officers noticed the vehicle because it was so clean and the other vehicles were dirty and muddy due to the rain and snow from the previous day and the water that was still on the ground. When the vehicle crossed into the United States, the officers stopped the vehicle and conducted an inspection.

Both officers inspected the fuel tank of the vehicle. The officers each tapped on the gas tank with a duty hammer and they felt a solid gas tank. When the officers inspected the gas tank from underneath the vehicle they observed that the bolts of the gas tank were shiny and had been tampered with. Based on their training and experience, the officers believed there might be something concealed in the tank. At trial, Officer Quintana testified that during her eight years as a CBP officer, she had encountered a significant amount of vehicles with narcotics. She explained that a solid gas tank is indicative of vehicles with narcotics and that new bolts on a used car are indicative of narcotics trafficking.

Officer Valle made the initial contact with the driver of the vehicle and asked him a series of standard questions.[3] Appellant claimed ownership of the vehicle and indicated that he had owned the car for two weeks. According to Officer Valle, Appellant was calm and exhibited a normal demeanor when he was asked about the vehicle's ownership. However, when asked for the vehicle registration, Officer Valle noted that Appellant's hands were shaking uncontrollably. Based on his training and experience, Officer Valle believed Appellant was nervous and was hiding something and knew that there was something in the vehicle. Officer Valle also observed that Appellant's hands were shaking when he handed over his driver's license and passport.

booth.
[3] At trial, Officer Valle identified Appellant as the person he spoke with and Officer Quintana identified Appellant as the driver of the vehicle they stopped.

2

During questioning about the purpose of his trip, Appellant stated he had driven the car into Mexico to visit his ill grandmother at the hospital. Appellant visited with his grandmother for an hour and a half and then came directly to the bridge. Appellant was in possession of the vehicle and the keys while in Mexico and no one borrowed the vehicle from Appellant.

Upon further questioning by Officer Valle about the vehicle, Appellant stated that he was responsible for everything in the vehicle. He indicated the car had engine work done about two weeks prior to the date in question. Appellant explained that the car was so clean because he kept it under a carport at his apartment complex. When asked how much money he had on his person, Appellant told Officer Valle that he had $45.

Officer Valle reported his findings to Officer Quintana, and asked her to take another declaration from Appellant. Appellant told Officer Quintana that he was a student at Coronado High School, that he had owned the vehicle for a month and that his father had purchased it for him on Alameda Avenue for $1,500. Appellant also stated the vehicle's transmission had been worked on since its purchase. Officer Quintana noticed Appellant's hand was shaking when he gave her the vehicle registration. Quintana observed that Appellant was hesitant to answer her questions, that he had dry mouth, was fidgety, and avoided making eye contact with her. To Officer Quintana, these were signs that Appellant was nervous.[4]

Appellant told Officer Quintana that he was in Juarez for two hours visiting his grandmother who had cancer. Appellant stated he was in possession of the vehicle the entire time he was in Mexico and that no one else had driven the vehicle. He denied that he was paid or threatened to bring the vehicle across, and stated that he was not bringing any narcotics across the

---

[4] Officer Quintana testified that based on her training and experience these were indicators that Appellant knew the marijuana was in the vehicle.

3

border.   Appellant reported that he was carrying $40.

Once Officer Quintana was finished with her questioning, Appellant was asked to exit the vehicle which was then driven to secondary inspection where CBP Officer Willie Minjarez conducted a canine inspection.   The canine alerted by lying down on the backseat of the vehicle. Officer Minjarez searched the backseat and did not see anything.   He then searched the trunk area. When he pulled back the carpet that was connected to the backseat he noticed a trap door[5] leading to the sending unit which sits on top of the gas tank.   Brown-taped bundles of marijuana, weighing 43 pounds, were found in the gas tank of the vehicle.   The net weight of the marijuana without the packing material was 38 pounds.

After Appellant was handcuffed, he was searched and over $1,000 dollars was found on his person.   At trial, El Paso Police Sergeant for the Alpha Narcotics Unit, Oracio Maldonado, testified that the price of marijuana in El Paso was between $250 and $280 per pound.   He testified that 38 pounds of marijuana would sell in El Paso for close to $10,000.   He further stated that based on his training and experience, drug dealers pay mules[6] between 10 to 20 percent of what a pound of marijuana is worth.   He explained that a mule would be paid about $1,000 to transport 38 pounds of marijuana valued at $10,000.

## DISCUSSION

### Sufficiency of the Evidence

In Issue One, Appellant argues the evidence is legally and factually insufficient to sustain a finding of guilt beyond a reasonable doubt.   Specifically, Appellant argues the evidence was insufficient to show that he knowingly was in possession of a controlled substance.   We reject

---

[5] According to Officer Minjarez the trap door was cut into the vehicle and was not part of a factory-purchased vehicle.
[6] Officer Maldonado testified that mules usually transport the narcotics from the fields to the city and distribute to the stash houses.

4

Appellant's factual insufficiency argument because Texas no longer recognizes factual insufficiency claims. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (stating that the legal sufficiency standard is the sole standard that a reviewing court should use to evaluate whether the evidence is sufficient to support each element of a criminal offense).

*Standard of Review*

In determining the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560, 573 (1979); *Brooks*, 323 S.W.3d at 895. The jury is the sole judge of the weight and credibility of the witnesses. *Brooks*, 323 S.W.3d at 899. It is the role of the jury to resolve any conflicts of testimony and to draw rational inferences from the facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). We do not overturn a verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The standard of review is the same for both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 158 (Tex. Crim. App. 1991), *overruled on other grounds, Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

**Possession and Affirmative Links**

A person commits the offense of possession of marijuana if the person knowingly or intentionally possesses a usable quantity of marijuana. TEX. HEALTH & SAFETY CODE ANN. § 481.121(a) (West 2010). Possession is defined as "actual care, custody, control, or management." TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010). The State had to prove beyond a reasonable doubt that the accused: (1) exercised actual care, custody, control, and management over the contraband, and (2) knew the substance he possessed was contraband. *See Evans v.*

*State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995); *Menchaca v. State*, 901 S.W.2d 640, 651 (Tex. App. – El Paso 1995, pet. ref'd). Regardless of whether the evidence is direct or circumstantial, the State must show that the accused's connection with the narcotics was more than just fortuitous. *Evans*, 202 S.W.3d at 161. The mere presence of the accused at the location where the narcotics are found is alone, insufficient to demonstrate actual care, custody, or control of the narcotics, presence or proximity, when combined with other evidence, either direct or circumstantial (e.g. "links"), may well be sufficient to establish that element beyond a reasonable doubt. *Id*. at 162.

As applicable to the case before us, in determining whether sufficient evidence links an accused to the contraband, some of the relevant factors we consider include whether (1) the accused was present when the search was conducted; (2) the contraband was in plain view; (3) the contraband was found in proximity and accessible to the accused; (4) the accused made incriminating statements when arrested; (5) other contraband or drug paraphernalia was present; (6) the accused owned or had the right to possess the place where the drugs were found; (7) the drugs were found in an enclosed place; (8) the accused was found with a large amount of cash; (9) the accused's conduct indicated a consciousness of guilt; (10) the accused was the driver of the vehicle in which the contraband was found; and (11) the occupants of the vehicle gave conflicting statements about relevant matters. *See Olivarez v. State*, 171 S.W.3d 283, 291 (Tex. App. – Houston [14th Dist.] 2005, no pet.); *De La Paz v. State*, 901 S.W.2d 571 584 (Tex. App. – El Paso 1995, pet. ref'd). The actual number of factors present is not as important as the logical force they have in establishing the commission of the crime. *Olivarez*, 171 S.W.3d at 291.

*Application*

Appellant argues there was insufficient affirmative links to establish that he was guilty

beyond a reasonable doubt.   We disagree.   Despite the fact that Appellant points out that specific affirmative links were not present, such a notation does not negate the other established links.   *See Lair v. State*, 265 S.W.3d 580, 588 (Tex. App. – Houston [1st Dist.] 2008, pet. ref'd) ("Further possible links that do not exist, however, do not negate the links that are present.").   Various links exist here.

Appellant was the owner of the car, he was present when the search of his vehicle was conducted, and he was the sole driver and occupant of the car in which the contraband was discovered.   Furthermore, the marijuana was enclosed in the fuel tank of the vehicle, a large amount of marijuana was found, and the marijuana was valued at close to $10,000.   *See, e.g.*, *Robinson v. State*, 174 S.W.3d 320, 327 (Tex. App. – Houston [1st Dist.] 2005, pet. ref'd) (whether contraband is found inside an enclosed space is an affirmative link and a vehicle containing the contraband is an enclosed space); *Allen v. State*, 249 S.W.3d 680, 698 (Tex. App. – Austin 2008, no pet.) (the presence of a large quantity of drugs strengthens the inference that the accused was aware of the drugs); *Roberson v. State*, 80 S.W.3d 730, 740 (Tex. App. – Houston [1st Dist.] 2002, pet. ref'd) (the presence of a significant amount of drugs is an affirmative link connecting the accused to the contraband); *Rabago v. State*, No. 13-00-177-CR, 2001 WL 997386, at *2 (Tex. App. – Corpus Christi Apr. 26, 2001, pet. ref'd) (not designated for publication) (concluding the fact that appellant was found with substantial quantity of drugs valued at $7,000 indicated it was unlikely he was in possession of valuable item without being aware of it).

Moreover, when questioned by Officer Quintana, Appellant appeared nervous, fidgety, avoided direct eye contact, and exhibited dry mouth indicating a consciousness of guilt.   *See Granados v. State*, 843 S.W.2d 736, 740 (Tex. App. – Corpus Christi 1992, no pet.) (finding affirmative link when appellant appeared very nervous, avoided direct eye contact, had a shaky

7

voice, and gripped steering wheel tightly). Appellant, a high school student, was found to have more than $1,000 on his person after having told Officer Valle that he only had $45. *See Eaglin v. State*, 872 S.W.2d 332, 337 (Tex. App. – Beaumont 1994, no pet.) (holding that jury could infer that $1,000 cash found on appellant was evidence that he was in control of the contraband).

Appellant asserts that although there was some suspicious circumstantial evidence, the evidence was insufficient to find guilt beyond a reasonable doubt. Appellant argues that it is plausible that the car already contained the marijuana when it was purchased or that the people who had done repair work on the car had placed the contraband in the vehicle unbeknownst to Appellant. The State responds that Appellant's arguments are without merit due to the implausibility of his story. A defendant's advancement of an implausible story to explain his actions can provide circumstantial evidence indicating guilty knowledge. *Bethancourt-Rosales v. State*, 50 S.W.3d 650, 655 (Tex. App. – Waco 2001, pet. ref'd).

At trial, Appellant elicited testimony from the State's witnesses indicating that they did not know how long the marijuana had been in the vehicle and that they did not see anyone or Appellant put the drugs in the fuel tank. However, Officer Valle testified the gas tank of Appellant's vehicle was completely full of marijuana and that he believed the tank could have only held enough gas to make it across the bridge. Officer Valle did not believe that a person could have owned the car for two weeks and not notice the amount of marijuana in the gas tank because he would have had to put gas in the vehicle on a daily basis or at least every other day. Additionally, we note that Appellant gave conflicting statements about how long he had owned the car.[7] Similarly,

---

[7] Appellant told Officer Valle that he had owned the car for two weeks, but told Officer Quintana that he had owned the vehicle for a month.

8

Appellant provided incongruent statements concerning the repair work performed on his vehicle.[8]

The State also points out that Appellant's argument concerning the fuel tank does not explain Appellant's explanation as to why his car was so clean given the rain and snow from the previous day and the water that was still on the ground. Appellant told Officer Valle his car was clean because he kept it under a carport. However, based on her training and experience, Officer Quintana testified that a vehicle that had been driven in Mexico to the hospital and back would be dirty due to the weather conditions at that time. Based on this evidence, the jury could infer guilty knowledge from the implausibility of Appellant's story. *See Bethancourt-Rosales*, 50 S.W.3d at 655 (jury was free to infer guilty knowledge from implausibility of appellant's story that she had been in Houston for last two weeks when receipt showed she had made repairs to vehicle in Ohio five days prior to being stopped by police); *see also United States v. Casilla*, 20 F.3d 600, 604-06 (5th Cir. 1994) (implausible explanation by defendant about how he came to be driving a van with cocaine hidden inside was part of the circumstantial evidence from which the jury could infer the defendant had knowledge of the drugs in the van).

Given the links present in this case, we find the logical force of all the evidence presented at trial sufficiently established a link between Appellant and the marijuana. *See Evans*, 202 S.W.3d at 162. Viewing the evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt that Appellant exercised care, custody, control, or management over the marijuana and knew that substance he possessed was marijuana. *See Johnson v. State*, 23 S.W.3d 1, 14 (Tex. Crim. App. 2000) (great deference is given to the jury on deciding the weight of the evidence and the credibility of the witnesses). Issue One is

---

[8] Appellant told Officer Valle that the car had engine work done while he told Officer Quintana that he had worked on the transmission.

9

overruled.

## Ineffective Assistance of Counsel

In Issue Two, Appellant contends that his attorney rendered ineffective assistance of counsel by failing to (1) exercise all his peremptory strikes despite Appellant's request to have certain jurors struck; and (2) allow Appellant to testify on his own behalf.

To prevail on a claim of ineffective assistance of counsel, Appellant must show that: (1) his attorney's performance was deficient; and that (2) his attorney's deficient performance prejudiced his defense. *See Smith v. State*, 286 S.W.3d 333, 340 (Tex. Crim. App. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Under the first prong, the attorney's performance must be shown to have fallen below an objective standard of reasonableness. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). Namely, Appellant must prove that his attorney's conduct fell below the professional standard. *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). Under the second prong, Appellant must establish that there is a reasonable probability that but for his attorney's deficient performance, the outcome of his case would have been different. *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Thompson*, 9 S.W.3d at 812. "Reasonable probability" is that which is "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). If the two-pronged test is not satisfied the ineffective assistance of counsel claim is defeated. *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).

### *Failure to Use Peremptory Strikes*

First, Appellant maintains that his trial counsel was ineffective for failing to remove jurors that Appellant did not want on the jury panel. Specifically, he asserts that "[t]his conduct

10

on the part of defense counsel is outrageous and no competent attorney would have left strikes unused in the face of specific requests by a client to have the peremptory strikes used." However, as correctly pointed out by the State, Appellant has inadequately briefed this argument. An appellant's brief must contain a clear and concise argument containing appropriate citations to authority and to the record. *See* TEX. R. APP. P. 38.1(i). Appellant has failed to cite to any legal authority in support of his argument and he does not address how trial counsel's performance or lack thereof prejudiced his defense. Because we conclude Appellant has inadequately briefed this argument, he has waived appellate review of his complaint. *See McCarthy v. State*, 65 S.W.3d 47, 49 n.2 (Tex. Crim. App. 2001) (an inadequately briefed issue may be waived on appeal); *see also Bessey v. State*, 199 S.W.3d 546, 555 (Tex. App. – Texarkana 2006), *aff'd*, 239 S.W.3d 809 (Tex. Crim. App. 2007) (appellant's ineffective assistance claim overruled due to inadequate briefing where appellate brief made no effort to show how record demonstrated prejudice under *Strickland*).

### *Failure to Testify*

Next, Appellant contends his trial counsel was ineffective in denying Appellant's constitutional right to testify on his own behalf. Appellant also appears to argue that his trial counsel was ineffective because trial counsel failed to put forth a defense and failed to prepare Appellant to testify. Appellant's argument is multifarious because it alleges more than one specific ground of error. *See Mays v. State*, 318 S.W.3d 368, 385 (Tex. Crim. App. 2010). As such, we will only address Appellant's complaint that he received ineffective assistance of counsel when his trial counsel failed to allow Appellant to testify at trial.

In support of his ineffective assistance claim Appellant refers to an affidavit he attached to a motion for new trial. In the affidavit, Appellant stated that his attorney did not discuss his

11

right to testify at trial with him and did not prepare him to testify. Appellant stated that he decided not to testify at trial because he was unprepared to testify and that if he had been prepared, he would have strongly considered testifying. However, an affidavit attached to a motion for new trial is not evidence and it must be presented at a hearing on the motion to be considered on appeal. *Rouse v. State*, 300 S.W.3d 754, 762 (Tex. Crim. App. 2009); *Jackson v. State*, 139 S.W.3d 7, 20-21 (Tex. App. – Fort Worth 2004, pet. ref'd). Here, the record does not reflect that Appellant's affidavit was admitted into the record and considered by the trial court as evidence or that a hearing on Appellant's motion for new trial was conducted; therefore, we do not consider the affidavit on appeal. *Rouse*, 300 S.W.3d at 762; *Jackson*, 139 S.W.3d at 20-21.

On review, we presume that the attorney's representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001) (quoting *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Ineffective assistance claims must be firmly found in the record, and the record must affirmatively show the alleged ineffectiveness. *Mallett*, 65 S.W.3d at 63 (quoting *Thompson*, 9 S.W.3d at 814). When the record is silent and does not provide an explanation for the attorney's conduct, the strong presumption of reasonable assistance is not overcome. *Rylander*, 101 S.W.3d at 110-11. We do not engage in speculation to find ineffective assistance when the record is silent as to an attorney's strategy at trial. *Robinson v. State*, 16 S.W.3d 808, 813 n.7 (Tex. Crim. App. 2000). However, when we are presented with a silent record, we can find ineffective assistance of counsel only if the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005).

Although Appellant states that his attorney's actions in this case were so outrageous that no competent attorney would have acted in this manner, the record before us is silent regarding

12

his attorney's trial strategy. Other than the affidavit attached to Appellant's motion for new trial, there is nothing in the record concerning Appellant's discussions with his attorney about his right to testify. The record shows that Appellant and his attorney spoke after the State rested its case, but based on the record, we do not know what advice Appellant received from his attorney about his right to testify. Moreover, there is nothing in the record demonstrating that Appellant was not allowed to testify or that he wanted to testify. In this case, we decline to find that Appellant's attorney engaged in conduct that fell below an objective standard of reasonableness. *See Rylander*, 101 S.W.3d at 111 (noting that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective"). Accordingly, we conclude that the record does not affirmatively demonstrate the alleged ineffective assistance of counsel and Appellant has failed to carry his burden of establishing ineffective assistance of counsel. *See Rylander*, 101 S.W.3d at 110-11; *Mallett*, 65 S.W.3d at 59. Issue Two is overruled.

## CONCLUSION

The trial court's judgment is affirmed.


GUADALUPE RIVERA, Justice

January 10, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

13